PATRICIA HARTLEY, Plaintiff-Appellant, *v.* WILL COUNTY BOARD OF REVIEW *et al.*, Defendants-Appellees.

Third District   No. 81-595

Opinion filed June 11, 1982.—Rehearing denied July 12, 1982.

Joseph C. Fitzgerald and James B. Harvey, both of McKeown, Fitzgerald, Zollner, Buck, Sangmeister & Hutchison, of Joliet, for appellant.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin, of State's Attorneys Appellate Service Commission, of counsel), for appellees.

JUSTICE ALLOY delivered the opinion of the court:

Lockport Township Assessor Patricia Hartley appeals from the dismissal of her complaint for a writ of *certiorari*. Hartley had petitioned the circuit court for the writ in order to obtain review over the action of the Will County Board of Review in setting the Lockport Township multiplier for 1980 tax assessments. In the complaint, she alleged that the county board of review had failed to follow specific statutory requirements in determining the township multiplier. A second count of the complaint, seeking injunctive relief against the county clerk and county treasurer to prevent collection of the second installment of 1980 taxes, was also presented to the circuit court. On motion of the defendants, the complaint was dismissed and this appeal followed. No issue is raised with respect to the injunctive count of the complaint. The appeal centers upon the propriety of dismissal of the count seeking a writ of *certiorari*.

The central statutory provision involved in this appeal is section 108a of the Revenue Act of 1939 (Ill. Rev. Stat. 1979, ch. 120, par. 589.1), which sets forth the duties of and procedures for the board of review when equalizing assessments:

> "The board of review shall act as an equalizing authority. The board shall lower or raise the total assessed value of property in any assessment district within the county so that such property, other than property assessed in accordance with Section 20e of this Act, will be assessed at 33 1/3% of its fair cash value.

By means of a comparison of assessed valuations and estimated 33 1/3% of fair cash values established through the analysis of at least 25 property transfers, or a combination of at least 25 property transfers and property appraisals, such information as may be submitted by interested taxing bodies, and such other means as it deems proper and reasonable, the board shall annually ascertain and determine the percentage relationship for each assessment district of the county, between the valuations at which locally-assessed property, other than property assessed in accordance with Section 20e of this Act, is listed by assessors and the estimated 33 1/3% of the fair cash value of such property. Should there not be 25 property transfers available, or should these 25 property transfers not represent a fair sample of the types of properties and their proportional distribution in the assessment district, the board shall select a random sample of properties of a number necessary to provide a combination of at least 25 property transfers and property appraisals as much as possible representative of the entire assessment district, and provide for their appraisal. The township assessor shall be notified of and participate in any and all such deliberations and determinations.

With the ratio so ascertained and determined for each assessment district, the board shall then ascertain the amount to be added or deducted from the aggregate assessment on property subject to local assessment jurisdiction other than property assessed in accordance with Section 20e of this Act, in order to produce a ratio of assessed to 33 1/3% of the fair cash value equivalent to one hundred per cent. Provided, however, in determining the amount to be added to the aggregate assessment on property subject to local jurisdiction in order to produce a ratio of assessed value to 33 1/3% of the fair cash value equivalent to one hundred per cent, the board shall not, in any one year, increase or decrease the aggregate assessment of any assessment district by more than 25% of the equalized valuation of such district for the previous year, except that additions, deletions or depletions to the taxable property shall be excluded in computing such 25% limitation. The board shall complete the equalization of assessments to 33 1/3% of the fair cash value for the various assessment districts within the county by the date prescribed in Section 107 of this Act for the board's adjournment, and shall, within 10 days thereafter, report the results of its work under this Section 108a to the Department. If the board fails to make this report to the Department within the required time, or if the report discloses that the board has failed to make a proper and adequate equalization of assessments, then the De-

partment shall direct, determine, and supervise the assessment for taxation of all real and personal property to the end that all assessments of property be made relatively just and equal as provided in Section 130 of this Act."

The pertinent facts in the record, taken from plaintiff's petition, which for purposes of the motion to dismiss must be taken as true, indicate that the Will County Board of Review, on or about August 18, 1981, voted to utilize township multipliers to equalize real estate assessments throughout Will County. A multiplier of 1.2363 was adopted for application to real property located in Lockport Township, plaintiff Hartley's township. Hartley's complaint, in pertinent part, alleged that the board of review had proceeded illegally in adopting that multiplier, in that it failed to follow the mandates of the above set forth statutory provision. Specifically, as involved in this appeal, the complaint stated that the board never notified her, as township assessor, of the deliberations or determinations it made in arriving at the multiplier and that it never consulted with her in those deliberations or determinations. The statute states: "The township assessor shall be notified of and participate in any and all such deliberations and determinations." (Ill. Rev. Stat. 1979, ch. 120, par. 589.1.) The complaint states that the property transfers considered by the board did not represent a fair sample of the types of properties and their proportional distribution in Lockport Township. It is also alleged that the board failed to select a random sample of properties of a number necessary to provide a combination of property transfers and property appraisals representative of the township district. Also asserted in the complaint is that the board violated the above provision in that it increased the assessment by more than 25% in one year. The final allegation in the complaint for writ of *certiorari* is that the petitioner Hartley has no other avenue for appeal or review of the action by the board, save by virtue of the writ of *certiorari* directed to the board of review, commanding it to certify and bring the record of its proceedings before the circuit court.

The complaint was filed by assessor Hartley on August 21, 1981, three days after the action of the board of review on the multiplier. As noted previously, the complaint contained a count requesting injunctive relief, as well, but that count is not before us on this appeal.

The defendants filed a motion to dismiss the complaint, which was granted by the circuit court on August 31, 1981, the court stating there was no basis for the complaint. Petitioner-assessor Hartley appealed from the dismissal.

■■■ The issue raised by the appellant Hartley is whether the common law writ of *certiorari* is a proper procedure by which to review the decision of the board of review in setting the township multiplier, where

the allegations are that the board violated statutory requirements in setting the multiplier. For purposes of this appeal of the dismissal of her complaint, we will proceed accepting as true the allegations of fact contained in the complaint that the board did proceed in violation of the statute. The common law writ of *certiorari* is an ancient writ growing out of chancery, whereby a petitioner who was without avenue of appeal or review could obtain limited review over action by a court or other tribunal exercising quasi-judicial functions. (*People ex rel. Loomis v. Wilkinson* (1852), 13 Ill. 660, 661.) As stated by the supreme court in *Kinsloe v. Pogue* (1904), 213 Ill. 302, 304, citing *Wilkinson*:

> "The law is too well settled in this jurisdiction to now be questioned, that the circuit courts of this State may award the common law writ of *certiorari* to all inferior tribunals and jurisdictions within the State where it appears that they have exceeded the limits of their jurisdiction or where they have proceeded illegally and no appeal is allowed or other mode provided by law for reviewing their proceedings."

Again, in *Jarman v. Board of Review* (1931), 345 Ill. 248, 255, 178 N.E. 91, the court stated:

> " 'There are two classes of cases in which the circuit court may award the common law writ of *certiorari* to bring before the court for its inspection the record of an inferior court, tribunal or jurisdiction exercising functions judicial in their nature: First, where it is shown that the inferior court, tribunal or jurisdiction has exceeded its jurisdiction; second, where it is shown that the inferior court, tribunal or jurisdiction has proceeded illegally and no appeal or writ of error will lie and no other mode of directly reviewing the proceeding is provided.' " (See also *Goodfriend v. Board of Appeals* (1973), 18 Ill. App. 3d 412, 418-19, 305 N.E.2d 404.)

This limited application of the writ of *certiorari* must be stressed. It may be used to obtain review over a decision by an inferior court or tribunal, where it is shown that the inferior court or tribunal was without jurisdiction (either subject matter or *in personam*) or where it exceeded its jurisdiction. That has been perhaps its principal use in this State. In addition, it may be used to obtain review over a decision by an inferior court or tribunal where it is shown that the court or tribunal did not "proceed legally," that is, where it did not follow the essential procedural requirements applicable to such cases. (*Carroll v. Houston* (1930), 341 Ill. 531, 535, 173 N.E. 657; *Joyce v. Chicago* (1905), 216 Ill. 466, 470, 75 N.E. 184; *People ex rel. Maloney v. Lindblom* (1899), 182 Ill. 241, 245, 55 N.E. 358; *Drury v. Hurley* (1949), 339 Ill. App. 33, 88 N.E.2d 728; *People ex rel. Holland v. Finn* (1927), 247 Ill. App. 53, 56-57.) This latter class of cases focuses upon whether the lower court or tribunal proceeded in accor-

dance with the required essential procedures applicable to its jurisdiction and the action taken by it. As such, the inquiry, with its due process connotations, is closely akin to inquiry into the question of jurisdiction. In fact it has been held by some courts that failure to follow essential legal procedures constitutes action in excess of jurisdiction, for purposes of review by common law writ of *certiorari*. (*Yoakum v. Small Claims Court* (1975), 53 Cal. App. 3d 398, 125 Cal. Rptr. 882. See 14 Am. Jur. 2d *Certiorari* secs. 9, 64 (1964).) Thus, it has been held that where the record shows that the inferior court or tribunal acted within its jurisdiction and proceeded by the applicable procedural requirements, then the writ of *certiorari* will not lie. (*Carroll v. Houston* (1930), 341 Ill. 531, 535; *Joyce v. Chicago* (1905), 216 Ill. 466, 470-71; *People ex rel. Maloney v. Lindblom* (1899), 182 Ill. 241, 245.) As the court indicated in those cases, a proper inquiry under a writ of *certiorari* is limited to those narrow questions, and inquiry is not proper as to whether the inferior court or tribunal correctly decided the questions before it. The supreme court in *Joyce* quoted from *Lindblom*:

> " 'The inferior tribunal, where the record is brought before the court by writ of *certiorari*, may have erred in its rulings on questions of law during the progress of the trial or it may have erred in the application of the law to the facts in reaching its final judgment, and yet those errors cannot be reviewed and corrected in a proceeding of this character. On a return to a writ bringing the record before the court the only  proper inquiry is whether the inferior tribunal had jurisdiction and proceeded legally,— *i.e.*, followed the form of proceedings legally applicable in such cases,— and not whether it correctly decided the questions arising upon the admission or exclusion of evidence, the giving and refusing of instructions, and other like questions, during the progress of the trial. The rulings of a court may be erroneous and yet it may have jurisdiction and proceed legally.' " (216 Ill. 466, 471, quoting from 182 Ill. 241.)

The proceedings under a writ of *certiorari* were outlined also in *Goodfriend v. Board of Appeals* (1973), 18 Ill. App. 3d 412, 418-19:

> "Trial of the certiorari count, however, was governed by different rules. The writs, on their return, brought the relevant records in order that the trial court could determine whether, with regard to the assessments involved, the Board had jurisdiction and had acted in accordance with law. [Citation.] The trial was to consist only of an inspection of the records of the Board's proceedings. [Citations.] Questions of fact could not be reviewed or decided. [Citations.] The record could not be contradicted, it being the rule that, in the absence of statutory authorization, a trial

court on the return of the writ of certiorari cannot admit extrinsic evidence whether to support or overthrow the proceeding being reviewed. [Citations.] With regard to the judgments which the court could enter, there were only two: (1) If from its record it appeared that the Board lacked jurisdiction or that its actions were illegal, the trial court could quash the Board's proceedings. (2) If it appeared that the Board had jurisdiction and its actions were legal, the certiorari counts had to be dismissed and the writs quashed. [Citations.]" (See also *Jarman v. Board of Review* (1931), 345 Ill. 248, 255-59, 178 N.E. 91.)

The *Jarman* case dealt with an allegedly improper assessment of omitted credits for taxation against an estate. In that case, the supreme court reviewed the applicable rules of law with respect to review by common law writ of *certiorari* (345 Ill. 248, 254-58), with the court concluding that the writ should issue and the board of review's proceedings were quashed (345 Ill. 248, 259). The basis for that decision was a failure to abide by essential procedural requirements, specifically the essential procedural requirement that the record show that evidence was heard to support the decision reached. There, the court found the record devoid of any evidence to sustain the determinations of the Board. (345 Ill. 248, 259.) The court in *Jarman* also found that certain allegedly available other adequate remedies were not in fact adequate avenues for review. (345 Ill. 248, 254-56.) As noted, the absence of other adequate remedies for direct review is another essential precondition to review by common law *certiorari*.

Having set forth the applicable law, we turn then to the facts of the case at bar. Initially, the procedural aspects of the case must be emphasized. The trial court had before it a petition for writ of *certiorari*, alleging certain illegalities by the board of review in setting the Lockport Township multiplier. The request in the petition was that a writ issue to the board to bring the record of its proceedings before the court for review. That petition and its request were dismissed. The issue is whether the factual allegations in plaintiff's petition, which must be taken as true at this stage, were sufficient to state a basis for review by common law writ of *certiorari*. The alleged statutory violations included: (1) that the board did not give notice to the township assessor, nor did it consult with her in its deliberations and determinations; (2) that the board did not consider a fair representative sample of properties; (3) that the board failed to select a random sample of properties representative of the district; and (4) that the board increased the assessments for one year in excess of the permissible 25%. It was also alleged that no other avenue of direct review over the board's action was available. The question, specifically, is whether any of these violations is sufficient to establish that the board of

review acted without jurisdiction, or exceeded its jurisdiction, or that it proceeded outside of the essential and required form of procedure applicable to it by statute in determining the multiplier for Lockport Township.

■■ Before addressing those questions, however, we are met by the board of review's assertion that the plaintiff Hartley is without standing to bring the *certiorari* action, either in her capacity as township assessor or as a taxpayer of Lockport Township. Plaintiff Patricia Hartley alleged in her complaint that she owned real estate at 323 Dundee Drive, Lockport, Illinois, in Lockport Township. As an owner of real property subject to taxation in the township assessment district, plaintiff Hartley asserts a sufficient interest as an affected party so as to confer standing upon her. The defense's argument to the contrary is without merit. They correctly note that the board of review's powers as an equalizing authority are limited to county property other than farmland. Then, however, they argue that by failing to allege that her property was other than farmland, Hartley failed to state sufficient facts to show that her property would be affected by the setting of the township multiplier. We would note that pleadings must be liberally construed and that Hartley's real property is alleged to be located at 323 Dundee Drive, Lockport, Illinois, which, with a liberal construction, would give rise to the inference that it was not farmland. We reject the defense argument, concluding that plaintiff alleged sufficient facts to give her standing as a taxpayer. As to her standing as township assessor, the defendants contend that even though she is required by section 108a to participate in all equalization deliberations and determinations of the board of review, nevertheless their failure to notify her of such deliberations, with the resultant lack of participation by her, is without sufficient effect upon her interests to support standing. They argue that since they did not give her notice, she would possibly not be liable for any unlawful increase or decrease in tax assessment. In the first place, the legislature determined and mandated that the township assessor be given notice and participate in the equalization deliberations and determinations of the board of review. Given that mandate, it would be anomalous to find that the assessor is without standing to challenge board of review action in failing to give her notice, or in proceeding without her participation. She is an aggrieved party when not notified and not given an opportunity to participate, since she has thereby been effectively prevented from fulfilling her duties as township assessor. This is so regardless of any potential liability or the lack of it. Furthermore, it is certainly an open question whether such liability would or would not attach if the assessor were to acquiesce in her omission from the deliberations, if they were subsequently determined to have unlawfully set the valuation. Section 322 (Ill. Rev. Stat. 1979, ch. 120, par. 803) states:

"*Any assessor*, or deputy assessor, county assessor, member of the board of appeals *or member of the board of review*, or other person *whose duty it is to* assess property for taxation or *equalize any such assessment, who shall* refuse or *knowingly or wilfully neglect any duty required of him by law, or who shall consent to or connive at any evasion of the provisions of this Act whereby* any property required to be assessed shall be unlawfully exempted in whole or in part, or *the valuation thereof be set down at more or less than is required by law, shall be guilty of a Class A misdemeanor. He shall also be liable upon his bond to the party injured for all damages sustained by such party as above provided, and shall also be removed from office by the judge of the court before whom he is tried and convicted.*" (Emphasis added.)

Plaintiff assessor Hartley has standing, as assessor as well as taxpayer, to bring the action for a writ of *certiorari*. We turn next to the question of whether the alleged deficiencies by the board were reviewable under the *certiorari* writ.

Plaintiff Hartley argues that her complaint alleged that the board of review had proceeded illegally in determining a multiplier, on the specifics before stated, and that it alleged that she had no other mode of direct review over their action. Therefore, according to Hartley, she had brought herself within the proper scope of common law *certiorari* proceedings. The defendants, on the other hand, argue that such review will only lie where defects in subject matter or personal jurisdiction are alleged, and no such allegations were made in plaintiff Hartley's petition. Further, the defense argues, even if available to challenge these illegal actions, the writ would not be available to plaintiff since she has other avenues of review available to her. Neither party is correct in its presentation of the scope of application for the common law writ of *certiorari*. The proper scope has previously been set forth in this opinion. The writ is not available to review all manner of illegalities by an inferior court or tribunal, but neither is it restricted solely to review over questions of subject matter and personal jurisdiction. It is available, when other manner of direct review is absent or inadequate, to review actions by inferior courts or tribunals where such action is alleged to have been taken without jurisdiction or in excess of jurisdiction, or where such action was taken without complying with the essential forms of proceeding applicable to the inferior court or tribunal. To the questions of whether plaintiff Hartley's allegations are sufficient to state a claim for review by common law *certiorari* we now turn.

■■ Plaintiff Hartley's allegations (1) that the board did not consider a fair representative sample of properties in the township, (2) that it did not select a random sample representative of the district, and (3) that it

increased the assessment by more than the permissible 25% in one year are allegations which are not sufficient for review by common law *certiorari*. None of the above affect or challenge the jurisdiction of the board of review, nor do they indicate that the board failed to follow the essential form of procedure applicable to it. Allegation (1) posits an evidentiary question as to whether the sample considered was representative. It does not allege that the board failed to consider property transfers in making its decision. Allegation (2) is premised upon a finding that (1) is correct, in that the duty to select a random sample only arises, under the statute, when 25 property transfers are not available or are not representative. These evidentiary matters are not reviewable by *certiorari*. The issue raised in allegation (3) is a substantive one, not relevant to jurisdiction or essential procedure, and would require extrinsic evidence. We find these allegations of illegalities insufficient as a basis for review of the board's action by common law *certiorari*. There is a fourth allegation, however, which stands on a different footing.

Plaintiff's petition also alleged that the board failed to give her the notice required to be given township assessors by statute and that it failed to consult with her in deliberating and determining a multiplier for her township. We find this to have been a serious violation of the requirements of the statute. The statute states: "The township assessor shall be notified of and participate in any and all such deliberations and determinations." (Ill. Rev. Stat. 1979, ch. 120, par. 589.1.) The legislature has mandated that prior to the board's deliberations and determinations on the multiplier question, the township assessor involved must be given notice and must participate in the deliberations and determinations. This statutory requirement sets forth an essential form of proceeding within which the board is to carry out its obligations to equalize the assessed valuations. The board is to proceed only after notice has been given and the assessor is given his opportunity to participate. Obviously, in this requirement we can see a legislative view that the assessors are both necessary and interested parties in such board decisions. That view no doubt stems from an awareness that the local assessors are often the persons most intimately acquainted with real estate matters in the townships. We conclude that any failure by the board to follow the requirement of the statute that it notify the township assessor of its proceedings, and afford an opportunity for the assessor's participation, constitutes a failure by the board to conform to the essential form of proceeding set forth and mandated by the statute. It is of little consequence whether we term such failure "acting in excess of jurisdiction" or "proceeding illegally," that is, outside the essential form of procedures legally applicable. Whichever characterization we use, it is clear that such a failure is sufficient to state a basis for review by common law *certiorari*,

providing that no adequate review is available by other manner. To that issue we now turn.

The defendants assert that there existed other sufficient remedies at law whereby plaintiff Hartley could have challenged the board's allegedly improper action. Specifically, they point to review by the property tax appeal board (Ill. Rev. Stat. 1979, ch. 120, par. 592.1) and review by payment under protest (Ill. Rev. Stat. 1979, ch. 120, pars. 675, 676, 716). We find such alleged remedies inadequate.

Review by the property tax appeal board is available to taxpayers or taxing bodies. The initial procedure for such review is set forth in section 111.1 of the Revenue Act of 1939:

"In any county other than a county of over 1,000,000 population, any taxpayer dissatisfied with the decision of a board of review as such decision pertains to the assessment of his property for taxation purposes, or any taxing body that has an interest in the decision of the board of review on an assessment made by any local assessment officer, may, within 30 days after the date of written notice of the decision of the board of review, appeal such decision to the Property Tax Appeal Board for review." (Ill. Rev. Stat. 1979, ch. 120, par. 592.1.)

Although aware of an Illinois Attorney General's opinion (1978 Ill. Op. Att'y Gen. 68) that concluded that multiplier decisions by boards of review were reviewable by the tax appeal board, we find that not to be the case here. The matter was correctly analyzed by the court in *Commonwealth Edison Co. v. Tucker* (1980), 86 Ill. App. 3d 630, 634, 408 N.E.2d 364:

"Section 109a of the Revenue Act provides that if a decision of a board of review is reviewable by the Property Tax Appeal Board, written notice of the decision and the procedures for review must be *personally served* on all affected taxpayers. (Ill. Rev. Stat. 1975, ch. 120, par. 590.1.) Edison claims that it was not given individual notice of the board of review's multiplier decision. Such a lack of personal notice is understandable as multiplier decisions have uniform township or county-wide application and thus notice by publication, and not personal service, is all that is required by statute. (Ill. Rev. Stat. 1975, ch. 120, par. 589(5).) In light of the fact that notice by publication is the accepted practice for multiplier decisions, we conclude that, notwithstanding the Attorney General's Opinion, multiplier decisions were not intended to be reviewable by the Property Tax Appeal Board under section 111.1."

Furthermore, such appeals, by section 111.1, must pertain to the assessment of the taxpayer's property, and in this case, plaintiff Hartley, as

township assessor with standing to object to her lack of notice as township assessor, has objections apart from any question of an assessment of her property.

The other alleged remedy, payment under protest, is also available only to taxpayers (Ill. Rev. Stat. 1979, ch. 120, par. 675), and the issues in such proceeding are limited to matters of valuation. (*Clarendon Associates v. Korzen* (1973), 56 Ill. 2d 101, 306 N.E.2d 299.) In the instant case, the question is one of compliance with the procedural requirements of the statute, not a valuation question, and is made by the township assessor required to be given notice, not by a taxpayer dissatisfied with his assessment. We find that plaintiff Hartley, as township assessor, had no direct avenue of review available to her by which to challenge the actions of the board of review in proceeding without giving her notice and an opportunity to participate. Having determined that Hartley's complaint sufficiently alleged that the board did not proceed legally, in that it did not give her notice, and that as township assessor she had no adequate remedy for review of that action, we conclude that the plaintiff's complaint, as to that allegation, sufficiently stated a cause of action for review by common law writ of *certiorari*. Plaintiff's petition should not have been dismissed, insofar as it sought review by *certiorari* over the board's failure to afford her notice and opportunity to participate. We would note that absent such review, the board of review's failure to comply with the statutory requirement would pass unreviewable. The circuit court should not have dismissed the *certiorari* count of plaintiff Hartley's complaint, insofar as it sought review of the failure by the board to give her notice, as township assessor.

The action of the Will County Circuit Court is reversed as to that basis for review, and the cause remanded for further proceedings in accordance with the views expressed in this opinion.

Reversed and remanded, with directions.

STOUDER and HEIPLE, JJ., concur.