THE CITY OF QUINCY, Plaintiff-Appellant, v. RICHARD CARLSON *et al.*, Defendants-Appellees.

Fourth District   No. 4—87—0320

Opinion filed December 10, 1987.

Immel, Zelle, Ogren, McClain, Germeraad & Costello, of Springfield (Kevin T. McClain and Thomas J. Immel, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Robert W. Mueller and James L. Morgan, Assistant Attorneys General, of Springfield, and Charles Scholz, Assistant Attorney General, of Quincy, of counsel), for appellees.

JUSTICE McCULLOUGH delivered the opinion of the court:

On June 11, 1986, the Illinois Environmental Protection Agency (EPA) issued a section 4(q) notice to plaintiff, the city of Quincy, alleging potential liability for release of hazardous substances in violation of the Illinois Environmental Protection Act (Act) (Ill. Rev. Stat. 1985, ch. 111½, par. 1004(q)). On January 21, 1987, the plaintiff brought suit for declaratory relief challenging the constitutionality of the section 4(q) notice provision and its potential liability under the Act. On January 22, 1987, the plaintiff filed a motion for preliminary injunction to enjoin enforcement of the provisions of the section 4(q) notice. The circuit court of Adams County denied the motion and, on April 13, 1987, granted the EPA's motion to dismiss the complaint for declaratory relief. The court granted judgment on the pleadings as to count I, upholding the constitutionality of the section 4(q) notice provisions, and dismissed the remaining counts for failure to state a cause of action.

The plaintiff appeals the order of the court and in support thereof maintains: first, section 4(q) of the Act is unconstitutional for deprivation of due process; and second, the court improperly dismissed counts II through V of the complaint. We affirm.

The controversy herein involves a plot of property in Adams County which was used as a landfill. During the years 1971 through 1976, the EPA issued numerous permits for the operation of a waste

disposal plant. The EPA approved disposal of both solid and liquid waste products. All permits were granted according to EPA specifications which included defined and analyzed waste characterizations and chemical analysis.

On June 18, 1979, the EPA certified the landfill as closed and covered. The plaintiff was informed of the three-year post-closure requirements pursuant to the rules and regulations of the Illinois Pollution Control Board. Ill. Rev. Stat. 1985, ch. 111½, par. 1022.3.

On July 11, 1986, the EPA issued a section 4(q) notice to plaintiff informing it of "actual and/or threatened release of hazardous substances from the site [which] may present an imminent and substantial endangerment to the public health or welfare or environment." Analysis of numerous groundwater samples taken from the site demonstrated the presence of hazardous materials. The notice outlined the identified response action to be undertaken by plaintiff in compliance with the Act. (Ill. Rev. Stat. 1985, ch. 111½, par. 1004(q).) Plaintiff was further informed of potential liability for punitive damages for failure to comply "without sufficient cause" pursuant to section 22.2 of the Act. Ill. Rev. Stat. 1985, ch. 111½, par. 1022.2.

The plaintiff's complaint for declaratory relief sought recovery on five counts. Count I challenged the constitutionality of the section 4(q) notice provision. Specifically, plaintiff claimed the absence of a preenforcement hearing, the lack of an alternative means of contesting alleged responsibility for hazardous discharges, and the potential threat of punitive damages deprived it of its constitutional rights to due process of law.

Count II alleged the section 4(q) notice issued by the EPA herein was void for vagueness, since the notice failed to specifically identify which statutory or regulatory provisions were allegedly being violated, and which hazardous substances were being released, and it could not be enforced.

Count III maintained the EPA was estopped from instituting the section 4(q) notice procedure because the EPA was aware of the potential for groundwater contamination when it granted permits for disposal of various liquid waste products.

Count IV asserted the EPA was withholding information sought by plaintiff and fully discoverable pursuant to the applicable provisions of the Illinois Administrative Procedure Act. Ill. Rev. Stat. 1985, ch. 127, par. 1001 *et seq.*

Count V maintained plaintiff, the city of Quincy, could not be liable for punitive or exemplary damages pursuant to the Local Governmental and Governmental Employees Tort Immunity Act, which pre-

cludes imposition of such damages against local public entities. Ill. Rev. Stat., 1986 Supp., ch. 85, par. 2—102.

The Illinois "Superfund" program adopted in 1983 is patterned after the Federal Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA) (42 U.S.C. §9601 *et seq.* (1982)). Under section 4(q) of the Illinois Act, the EPA is authorized to provide notice to any person who may be liable "for a release or a substantial threat of a release of a hazardous substance." (Ill. Rev. Stat. 1985, ch. 111½, par. 1004(q).) Such notice is to include "the identified response action and an opportunity for such person to perform the response action." Ill. Rev. Stat 1985, ch. 111½, par. 1004(q).

An alleged "responsible party" in receipt of a section 4(q) notice may opt to comply with the notice or ignore it. Where the party ignores the notice there will be no hearing on the matter until the EPA initiates a recovery action for expenses incurred in the cleanup process. No liability will be found if the alleged responsible party can establish that he (it) acted with "sufficient cause." (Ill. Rev. Stat. 1985, ch. 111½, par. 1022.2(k).) If liability is found to exist the party "may be liable to the State for punitive damages in an amount at least equal to, and not more than three times, the amount of any costs incurred by the State of Illinois as a result of such failure to take such removal or remedial action." Ill. Rev. Stat. 1985, ch. 111½, par. 1022.2(k).

The legislative policy underlying the adoption of these strict measures is the protection and enhancement of the quality of the environment achieved through prompt alleviation of environmental damage which poses serious endangerment to the public health and welfare. The purpose of the Act is to quickly remove hazardous releases or the possibility of such a release with the burden of expense imposed upon the responsible party. See Ill. Rev. Stat. 1985, ch. 111½, par. 1002.

Plaintiff initially contends the section 4(q) notice provision denies it an opportunity to be heard in a meaningful time and manner as constitutionally mandated. Under the Act, the plaintiff may opt to comply with or ignore the EPA order. There is no provision for a pre-enforcement hearing. If it chooses to comply and is later found to have a valid defense, there is no reimbursement provision. Plaintiff is left to seek out and obtain recovery from the responsible party. If, however, the plaintiff refuses to comply, it faces potential liability for punitive damages. The plaintiff maintains this statutory scheme with its ominous threat of punitive damages effectively prevents any challenge to the section 4(q) notice provision.

The United States Supreme Court has established a three-

pronged analysis for a due process challenge regarding deprivation of property. The court must consider: (1) the private interest at stake; (2) the risk of erroneous deprivation through the present procedures; and (3) the governmental and public interests at stake. (*Mathews v. Eldridge* (1976), 424 U.S. 319, 335, 47 L. Ed. 2d 18, 33, 96 S. Ct. 893, 903.) Generally, notice and a hearing prior to any governmental action is the constitutional prerequisite. (*Goldberg v. Kelly* (1970), 397 U.S. 254, 25 L. Ed. 2d 287, 90 S. Ct. 1011.) In extraordinary or emergency situations, however, due process will be satisfied by a post-deprivation hearing. (*Mathews v. Eldridge* (1976), 424 U.S. 319, 349, 47 L. Ed. 2d 18, 41, 96 S. Ct. 893, 909.) The protection of the public health and safety is a paramount governmental interest which justifies such summary administrative action. (*Hodel v. Virginia Surface Mining & Reclamation Association, Inc.* (1981), 452 U.S. 264, 300, 69 L. Ed. 2d 1, 31, 101 S. Ct. 2352, 2372-73.) Where the public health is threatened, an administrative agency may act first and litigate later. *Lone Pine Steering Committee v. EPA* (3d Cir. 1985), 777 F.2d 882.

■ The potential release of hazardous waste into the environment is the very type of extraordinary or emergency situation which justifies a post-deprivation hearing. There is a strong public interest in protecting the public health and environment. Accordingly, statutes which are enacted for the protection and preservation of public health are to be given extremely liberal construction for the accomplishment and maximization of their beneficial objectives. (*United States v. Conservation Chemical Co.* (W.D. Mo. 1985), 619 F. Supp. 162.) Consequently, the lack of a preenforcement hearing does not offend due process principles.

In *United States v. Reilly Tar & Chemical Corp.* (D. Minn. 1982), 546 F. Supp. 1100, the Federal EPA provisions withstood attack by a similar due process challenge. The court therein noted that allowing an alleged responsible party to challenge the merits of an administrative order prior to enforcement or recovery would handcuff the EPA by delaying effective responses to emergency situations. *United States v. Reilly Tar & Chemical Corp.* (D. Minn. 1982), 546 F. Supp. 1100, 1112; see also *Lone Pine Steering Committee v. EPA* (3d Cir. 1985), 777 F.2d 882 (provisions of CERCLA denying preenforcement review of cleanup order constitutional); *Wagner Electric Corp. v. Thomas* (D. Kan. 1985), 612 F. Supp. 736; *Aminoil, Inc. v. EPA* (C.D. Cal. 1984), 599 F. Supp. 69.

■ In *Ex Parte Young* (1908), 209 U.S. 123, 52 L. Ed. 714, 28 S. Ct. 441, the United States Supreme Court established that a statute denies due process where the penalties imposed thereunder are so se-

vere that they intimidate parties from seeking judicial review. Plaintiff maintains the punitive damage provisions of the Act constitute such a due process violation. A statute which imposes penalties for noncompliance with an administrative order will not violate due process, however, if a party who disobeys has the opportunity to assert a good-faith defense to the validity of the order. See *Reisman v. Caplin* (1964), 375 U.S. 440, 11 L. Ed. 2d 459, 84 S. Ct. 508; *Oklahoma Operating Co. v. Love* (1920), 252 U.S. 331, 64 L. Ed. 596, 40 S. Ct. 338.

Although there is no Illinois precedent construing the punitive damage provisions of the Act, the Federal provision has been tested. The applicable Federal provision, in pertinent part, provides:

> "If any person who is liable for a release or a threat of release of hazardous substance fails without sufficient cause to properly provide removal or remedial action \*\*\* such person may be liable to the United States for punitive damages in an amount at least equal to, and not more than three times, the amount of any costs incurred by the Fund as a result of such failure to take proper action." (42 U.S.C. §9607(c)(3) (1982).)

This provision has withstood due process challenges under the *Ex Parte Young* doctrine. In upholding the constitutionality of the statute, the courts construe the "sufficient cause language" to encompass a good-faith defense. See *Solid State Circuits, Inc. v. EPA* (8th Cir. 1987), 812 F.2d 383; *United States v. Reilly Tar & Chemical Corp.* (D. Minn. 1985), 606 F. Supp. 412.

In *Solid State Circuits*, the court found the doctrine of *Ex Parte Young* and its progeny fulfilled, specifically stating:

> "[T]o pass constitutional requirements, the standard must provide parties served with EPA clean-up orders a real and meaningful opportunity to test the validity of the order. [Citation.] At the same time, the standard must protect the government's interest in encouraging parties to conduct clean-ups promptly and in promoting settlements once the EPA has performed clean-ups itself \*\*\*. We are, therefore, convinced that 'sufficient cause' as used in CERCLA section 107(c)(3) may be constitutionally interpreted to mean that treble damages may not be assessed if the party opposing such damages had an objectively reasonable basis for believing that the EPA's order was either invalid or inapplicable to it." *Solid State Circuits*, 812 F.2d at 391.

See also *United States v. Reilly Tar & Chemical Corp.* (D. Minn. 1985), 606 F. Supp. 412 (Minnesota provisions providing for punitive damages absent good-faith defense found constitutional); *Wagner Elec-*

*tric Corp. v. Thomas* (D. Kan. 1985), 612 F. Supp. 736; but *c.f. Aminoil, Inc. v. EPA* (D. Cal. 1984), 599 F. Supp. 69.

■■ Based upon the Federal precedent, we find the "sufficient cause" language encompassed in our Act to provide parties with a good-faith defense to the imposition of punitive damages. As with the Federal provision, the punitive damages provision in Illinois is not mandatory. Since "an alleged responsible party" has the opportunity to challenge the validity of the agency's order prior to imposition of a penalty, due process is satisfied.

The trial court dismissed counts II through V of the complaint for failure to state a cause of action. In these counts, the plaintiff sought judicial review of various aspects of its potential liability under the section 4(q) process.

■■ ■ The essential requirements for a declaratory judgment include: (1) a plaintiff with a legal tangible interest; (2) a defendant with an opposing interest; and (3) an actual controversy between the parties concerning such interest. (*Griffin v. County of Cook* (1938), 369 Ill. 380, 398, 16 N.E.2d 906, 915; Ill. Rev. Stat. 1985, ch. 110, par. 2—701.)

> " ' "Actual" [controversy] in this context *** requires a showing that the underlying facts and issues of the case are not moot or premature, so as to require the court to pass judgment on mere abstract propositions of law, render an advisory opinion, or give legal advice as to future events. [Citations.] The case must, therefore, present a concrete dispute admitting of an immediate and definitive determination of the parties' rights, the resolution of which will aid in the termination of the controversy or some part thereof.' " (*Howlett v. Scott* (1977), 69 Ill. 2d 135, 141-42, 370 N.E.2d 1036, 1038, quoting *Underground Contractors Association v. City of Chicago* (1977), 66 Ill. 2d 371, 375, 362 N.E.2d 298, 300.)

Declaratory relief is a discretionary remedy within the powers of the trial court. *Howlett v. Scott* (1977), 69 Ill. 2d 135, 370 N.E.2d 1036.

■■ Since the merits of an EPA action are not properly before the court prior to a cost recovery action, there is no actual controversy presented. (Ill. Rev. Stat. 1985, ch. 111½, par. 1022.2.) As such, it was proper for the court to dismiss the complaint for declaratory relief.

The plaintiff's allegation that the order is inconsistent to the extent it grants judgment on the pleadings for count I is also without merit. The issue of the constitutionality of the statute was an actual controversy properly before the trial court. It was well within the

court's discretion to sever that count and rule upon the issue as presented. See *Wagner Electric v. Thomas* (D. Kan. 1985), 612 F. Supp. 736; *Aminoil, Inc. v. EPA* (D. Cal. 1984), 599 F. Supp. 69.

The order of the circuit court dismissing the complaint is affirmed.

Affirmed.

LUND and KNECHT, JJ., concur.