NATIONAL MARINE, INC., Plaintiff-Appellant, v. THE ENVIRONMEN-
TAL PROTECTION AGENCY *et al.*, Defendants-Appellees.

Third District   No. 3—90—0814

Opinion filed August 3, 1992.

Karen K. Litscher, of Much, Shelist, Freed, Denenberg, Ament & Eiger,
of Chicago (William A. Speary, Jr., of counsel), and Keith R. Leigh, of Pool
& Leigh, of Ottawa, for appellant.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Carol L. Edelson, Matthew J. Dunn, Joseph J. Annunzio, and William D. Seith, Assistant Attorneys General, of Chicago, of counsel), for appellees.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

Plaintiff, National Marine, Inc., appeals from judgment of the circuit court of Grundy County dismissing its first amended complaint for declaratory judgment and other relief. The suit arises out of defendant Illinois Environmental Protection Agency's (the Agency's) issuance of notice pursuant to section 4(q) of the Environmental Protection Act (Ill. Rev. Stat. 1991, ch. 111½, par. 1004(q)) (the Act). The circuit court ruled that the action was premature because plaintiff had not exhausted its administrative remedies and dismissed the complaint.

The Agency's notice to plaintiff was initially issued on February 26, 1990, and supplemented by a second, 25-page notice on May 18, 1990. The latter notice, which forms the basis for this suit, states, *inter alia*, that the Agency investigated plaintiff's property, found the release or threat of release of hazardous substances which presents an immediate and significant risk of harm to human life and health and to the environment, and determined that action was necessary to prevent or mitigate such risk. Specifically, the notice states that "the Agency through a contractor investigated the site and collected samples from three lagoons and other locations on the Site," and that testing showed certain concentrations of various volatile organic compounds, semi-volatile organic compounds, pesticides and metals. Based on this investigation, the Agency detailed 10 pages of "response action" to be taken by National Marine in anticipation of a cleanup.

Plaintiff's first amended complaint contains, in essence, two counts for relief. The first alleges that section 4(q) is unconstitutional and that the Agency acted arbitrarily and beyond its statutory authority in issuing the section 4(q) notice because contamination was found on only 12 acres of plaintiff's approximately 64-acre parcel and the notice relates to the entire parcel; further, that the notice issued in this case exceeded the Agency's authority because it was in the form of a "mandate" rather than a "notice." Plaintiff requests that the court declare the statute unconstitutional on its face and as applied, declare the Agency's action illegal, and permanently enjoin the Agency from enforcing its notice or relying on the factual findings as recited in the notice. In the second count, plaintiff alleges the same core facts, adding only that it has no adequate remedy at law, and requests that the court proceed un-

der the common law writ of *certiorari* to review the Agency's records and reverse and quash the notice.

The statutory provisions at issue provide:

> "The Agency shall have the authority to provide notice to any person who may be liable pursuant to Section 22.2(f) of this Act for a release or a substantial threat of a release of a hazardous substance or pesticide. Such notice shall include the identified response action and an opportunity for such person to perform the response action." Ill. Rev. Stat. 1989, ch. 111½, par. 1004(q).

> "Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (j) of this Section, the following persons shall be liable for all costs of removal or remedial action incurred by the State of Illinois as a result of a release or substantial threat of a release of a hazardous substance or pesticide:

> (1) the owner and operator of a facility or vessel from which there is a release or substantial threat of release of a hazardous substance or pesticide." Ill. Rev. Stat. 1989, ch. 111½, par. 1022.2(f).

In this appeal plaintiff argues both that it was not required to exhaust administrative remedies and that the trial court abused its discretion in denying judicial review under a common law writ of *certiorari*.

The Agency is authorized to issue "notices" under section 4(q) of the Act. Further, any cost-recovery action or action to impose civil penalties based on the property owner's failure to respond affirmatively to such notice would have to be initiated by the Agency before the Pollution Control Board (the Board) (Ill. Rev. Stat. 1989, ch. 111½, par. 1031(c)). Under the legislative scheme for the Illinois Environmental Protection Act, judicial review lies only from final orders of the Board. (Ill. Rev. Stat. 1989, ch. 111½, par. 1041.) Plaintiff points out, however, that where administrative action is challenged as unauthorized, exhaustion of administrative remedies is not required and the aggrieved party may proceed directly to the circuit court. *Landfill, Inc. v. Pollution Control Board* (1978), 74 Ill. 2d 541, 387 N.E.2d 258.

■ In our opinion, National Marine's challenge to the constitutionality of the statutory scheme in the first count was adequately addressed by the court in *City of Quincy v. Carlson* (1987), 163 Ill. App. 3d 1049, 517 N.E.2d 33. In *Carlson*, as here, the Agency issued a section 4(q) notice to the plaintiff-landowner alleging potential liability for actual or threatened release of hazardous substances from an area where hazardous substances had been found. Plaintiff brought suit in the circuit court seeking declaratory judgment and injunctive relief. Plaintiff brought five

counts, one claiming that the notice provision of the Act is unconstitutional on its face, and the other four counts charging improper Agency conduct. The trial court, on the Agency's motion, ultimately granted judgment on the pleadings upholding the constitutionality of the section 4(q) notice provision and dismissed the remainder of the complaint for failure to state a cause of action. Plaintiff appealed, and the reviewing court affirmed, holding that the trial court correctly ruled that section 4(q) satisfies the requirements of due process and that declaratory judgment on the remaining counts was unavailable because no actual controversy was presented.

In *Carlson*, as here, the plaintiff charged that the statutory scheme, inasmuch as it does not provide the landowner with a preenforcement hearing, deprives the potentially liable landowner of property rights without due process of law. As stated in *Carlson*:

"The potential release of hazardous waste into the environment is the very type of extraordinary or emergency situation which justifies a post-deprivation hearing. There is a strong public interest in protecting the public health and environment. Accordingly, statutes which are enacted for the protection and preservation of public health are to be given extremely liberal construction for the accomplishment and maximization of their beneficial objectives. (*United States v. Conservation Chemical Co.* (1985), 619 F. Supp. 162.) Consequently, the lack of a preenforcement hearing does not offend due process principles." 163 Ill. App. 3d at 1054, 517 N.E.2d at 36.

To the extent that the complaint challenges the statute on its face and as applied, the trial court in this case correctly ruled that preenforcement judicial review was not available.

Next, National Marine argues that even though an administrative agency's decision may not be reviewable under the Administrative Review Law (Ill. Rev. Stat. 1989, ch. 110, par. 3—101 *et seq.*), administrative action taken in issuing the notice in this case may still be reviewed in the circuit court by a petition for a common law writ of *certiorari*. (*Smith v. Department of Public Aid* (1977), 67 Ill. 2d 529, 367 N.E.2d 1286.) Defendants argue that despite National Marine's correct statement of the law with respect to the granting of writs of *certiorari* generally, the relevant question is whether the Agency acted within its jurisdiction (*Hartley v. Will County Board of Review* (1982), 106 Ill. App. 3d 950, 436 N.E.2d 1073); and since no judicial or quasi-judicial action was taken by the Agency, the trial court correctly dismissed the petition in this case.

■ As stated in *Hartley*, the proper inquiry under a writ of *certiorari* is limited to two narrow questions: whether the inferior tribunal, jurisdiction or court acted outside its jurisdiction; and whether the inferior tribunal, jurisdiction or court proceeded illegally and no other mode of direct review of the proceeding is provided. The writ is not available to determine whether the inferior tribunal, jurisdiction or court correctly determined the questions before it. 106 Ill. App. 3d at 955, 436 N.E.2d at 1076-77.

By petitioning for a common law writ of *certiorari*, the plaintiff seeks preenforcement judicial review that is precluded under the Act. Here, the only action taken by the Agency was the issuance of a section 4(q) notice. And, as noted above, there is no other mode of direct review of that action. As we see it, the question is whether the well-pleaded facts present a situation of such egregious overreaching that judicial intervention is warranted notwithstanding legislative preference to the contrary.

The pleadings establish that the firm hired by the Agency to investigate plaintiff's property only sampled the soil from an area of about 12 acres. The balance of the 64-acre site, according to the pleadings, was not tested for contamination. It is on the basis of this discrepancy that National Marine attacks the authority of the Agency to issue its supplemental 4(q) notice. Specifically, National Marine alleges that: (1) the Agency's supplemental notice included an additional 52.684 acres of plaintiff's property without proof of any contamination; (2) the 52.684 acres were not proved to be a "facility" from which there exists a release or threat of release of hazardous substances; (3) the inclusion of the 52.684 acres within the purview of the supplemental notice is arbitrary, capricious, an abuse of discretion and contrary to the manifest weight of the evidence; and (4) the Agency is not authorized to issue notices in the form of judicial or quasi-judicial "orders."

By alleging that the Agency has exceeded its authority, these claims arguably challenge the Agency's "jurisdiction." The first three allegations are premised on a finding that some 52 acres of the 64-acre site in question are not contaminated. The Agency virtually concedes the point, giving as its only reason for including the remainder of the "site" in its section 4(q) notice the fact that the 64 acres constitute a single undivided parcel now owned by National Marine.

The agency's notice alludes to contamination primarily in three lagoons tested "within or near" a 12-acre portion of the property that had been leased to various chemical manufacturers both before and after acquisition of the 64-acre parcel by National Marine. There is no indication that the contractor hired by the Agency to investigate the property even

took samples from any part of the 52 plus acres outside of the area where contamination was identified.

■ In our opinion, the gross disparity between the area of identified contamination and the area covered by the notice distinguishes this case from the *Carlson* case and justifies judicial intervention. National Marine understandably may have an interest in subdividing and transferring all or part of the approximately 52 acres that were not the subject of the Agency's investigation. It cannot do so while title to the entire parcel is clouded by the Agency's notice. And, at this point there is no meaningful way to estimate when the contaminated 12-acre area will be cleaned up. Thus, whether intentionally or not, the consequence of the Agency's "mere issuance of notice" in this case was to profoundly restrict the landowner's right to deal with some 52 acres of presumably "clean" property. Further, and contrary to the Agency's argument, we are not convinced that the fact that National Marine has not identified a ready, willing and able purchaser for any of the property is an adequate reason to deny National Marine its day in court before final Board action has been taken in enforcement proceedings initiated by the Agency.

Under the circumstances, we hold that the gross disparity between the area of alleged actual contamination and the area included in the notice presents a case appropriate for review under common law *certiorari* and that failure to grant such review was an abuse of the court's discretion.

We conclude that the circuit court of Grundy County erred in dismissing plaintiff's claim for common law writ of *certiorari*. Accordingly, we reverse the order of dismissal and remand this cause for further proceedings.

Reversed and cause remanded.

McCUSKEY, J., concurs.

JUSTICE GORMAN, dissenting:
I respectfully dissent. I agree with the majority's discussion of the facts, and I agree with their review of *City of Quincy v. Carlson* (1987), 163 Ill. App. 3d 1049, 517 N.E.2d 33, finding the Environmental Protection Act constitutional. I depart from the majority opinion on the availability of the common law writ of *certiorari* to attack the notice issued by the Illinois Environmental Protection Agency.

The majority opinion frames the issue as "whether the well-pleaded facts present a situation of such egregious overreaching that judicial in-

tervention is warranted notwithstanding legislative preference to the contrary." (232 Ill. App. 3d at 851.) I do not find support for the existence of such a test to determine the availability of a writ of *certiorari* and believe that the decided cases limit the availability of the writ to those instances in which the petitioner is without an avenue for review from an action by a tribunal exercising judicial or quasi-judicial functions. (*Stratton v. Wenona Community Unit District No. 1* (1990), 133 Ill. 2d 413, 551 N.E.2d 640.) The legislative scheme specifically provides for administrative review from final determinations, and I would hold that this writ is not available to test the adequacy of the notice.

The Agency was created by the Environmental Protection Act to perform technical, licensing and enforcement functions. It is the Agency's duty to investigate violations of the Act. (Ill. Rev. Stat. 1991, ch. 111½, pars. 1004(e), 1030.) Here, the Agency investigated National Marine's property and found the release or substantial threat of release of hazardous substances. Accordingly, the Agency issued a section 4(q) notice to National Marine. (Ill. Rev. Stat. 1991, ch. 111½, par. 1004(q).) Pursuant to this section, the notice included the identified response action and an opportunity for National Marine to perform the response action.

This notice, in and of itself, does not cause any legal detriment to the notified party. The party is, in fact, free to ignore the notice. (*City of Quincy*, 163 Ill. App. 3d at 1053, 517 N.E.2d at 35.) If that happens, the Agency is authorized to proceed with cleanup operations on its own. Ill. Rev. Stat. 1991, ch. 111½, par. 1004(s).

The Agency can then institute a cost-recovery action against the allegedly responsible parties. (Ill. Rev. Stat. 1991, ch. 111½, par. 1022.2(i).) The Pollution Control Board will hold a *de novo* hearing at which the Agency bears the burden of proving that the respondent caused the violation. Ill. Rev. Stat. 1991, ch. 111½, pars. 1031, 1032.

The Board was created by the Act to perform both quasi-legislative and quasi-judicial functions. If the Board finds the party liable and if it also finds that the party failed "without sufficient cause" to provide remedial action in accordance with the Agency's notice, the Board *may* impose punitive damages in addition to actual damages. (Ill. Rev. Stat. 1991, ch. 111½, par. 1022.2(k).) This provision is intended to further the legislature's desire for prompt alleviation of pollution without formal hearings by giving the responsible party a strong incentive to act. The Board's final decision may be appealed to this court. Ill. Rev. Stat. 1991, ch. 111½, par. 1041.

National Marine sought review of the notice by filing a writ of *certiorari* action in the circuit court. The common law writ of *certiorari*

was developed to provide a means whereby a petitioner who was without an avenue of appeal for direct review could obtain limited review over an action by a tribunal exercising judicial or quasi-judicial functions. (*Stratton*, 133 Ill. 2d at 427, 551 N.E.2d at 645.) This writ has an extremely limited application. (*Hartley v. Will County Board of Review* (1982), 106 Ill. App. 3d 950, 954, 436 N.E.2d 1073, 1076.) The absence of other adequate remedies for direct review is an essential precondition to review by common law *certiorari*. (*Hartley*, 106 Ill. App. 3d at 956, 436 N.E.2d at 1078.) The writ will not issue where another adequate remedy is available. (*First National Bank & Trust Co. v. Rosewell* (1982), 93 Ill. 2d 388, 396, 444 N.E.2d 126, 130.) If a writ is granted, the proper inquiry is limited to the narrow questions of whether the inferior court or tribunal acted within its jurisdiction and proceeded by the applicable procedural rules. (*Hartley*, 106 Ill. App. 3d at 954, 436 N.E.2d at 1076-77.) The granting or denial of a writ of *certiorari* lies within the broad discretion of the trial court. *Stratton*, 133 Ill. 2d at 428, 551 N.E.2d at 646.

Where the Administrative Review Law has been made applicable to an agency, it acts as the sole method of review, to the exclusion of any other statutory, equitable, or common law mode of review of decisions of administrative agencies. (Ill. Rev. Stat. 1991, ch. 110, par. 3—102.) Admittedly, the Administrative Review Law does not apply to all actions of the Agency. (*National Marine Service Inc. v. Environmental Protection Agency* (1983), 120 Ill. App. 3d 198, 208, 458 N.E.2d 551, 557.) Nor does the Environmental Protection Act expressly adopt the Administrative Review Law to review the issuing of a section 4(q) notice. (Ill. Rev. Stat. 1991, ch. 111½, par. 1041.) But that is simply because this action by the Agency is not any form of quasi-judicial action which would cause a legal detriment to National Marine.

The Agency argues that this notice does not constitute judicial or quasi-judicial action and therefore the question of whether it exceeded its jurisdiction should not be reached. National Marine argues that the language and form of the notice cause it to become a "final order."

The supreme court has said that the finality of an order is not necessarily determined by its form. (*Wilkey v. Illinois Racing Board* (1983), 96 Ill. 2d 245, 449 N.E.2d 843.) Instead, the ultimate question is " 'whether the judgment fully and finally disposes of the rights of the parties to the cause so that no material controverted issue remains to be determined.' [Citation.]" *Wilkey*, 96 Ill. 2d at 249, 449 N.E.2d at 844.

The notice does not dispose of the issues. It is merely a precursor to the filing of a complaint, which would then be followed by a *de novo* hearing. No matter what form or language the notice used, it is clear

that it does not in any way bind National Marine. The Agency would still have to plead and prove all the necessary facts before the Board in order to hold National Marine liable. Then, and only then, would National Marine have suffered a legal detriment. And any final decision of the Board would be appealable.

National Marine still has adequate avenues of review available to it. It can ignore the notice and wait for the Agency to institute a cost-recovery action, or it can attempt to settle the dispute. The Act specifically authorizes the Agency to negotiate and attempt a settlement prior to the filing of a formal complaint. (Ill. Rev. Stat. 1991, ch. 111½, par. 1031(d).) Indeed, the Act expresses a preference for settling without a formal hearing. Ill. Rev. Stat. 1991, ch. 111½, par. 1022.2a.

Even if this notice is held to constitute quasi-judicial action, National Marine must still show that the Agency was without jurisdiction to issue this notice. National Marine argues that the inclusion of the 52.684 acres as part of the facility affects the Agency's jurisdiction.

The Act does not require the Agency to limit its notice to the exact area where the hazardous substance was found. Rather, the legislature has given the term "facility" a broad meaning. Ill. Rev. Stat. 1991, ch. 111½, par. 1022.2(h)(1).

The size of the "facility," like the level of contamination and other such issues, is properly viewed as a question that goes to the merits of the action which should be decided by the Board. It is undisputed that the merits of an Agency action are not properly before the court prior to a cost-recovery action. (*City of Quincy*, 163 Ill. App. 3d at 1056, 517 N.E.2d at 37.) Moreover, it is equally well established that a writ of *certiorari* is not available to determine whether the inferior tribunal correctly determined the questions before it. *Hartley*, 106 Ill. App. 3d at 955, 436 N.E.2d at 1077.

Whether the Agency properly included the additional acreage is not a decision which can be reviewed by writ of *certiorari*. Simply because the decision of the Agency may ultimately be found to be wrong after a hearing before the Board does not mean that the Agency was without jurisdiction to make that decision.

The legislature has expressly precluded any preenforcement hearing in favor of an "act first and litigate later" approach. (*City of Quincy*, 163 Ill. App. 3d at 1053-54, 517 N.E.2d at 35-36.) Given the threat to public health that arises from a violation of the Act, both Federal and State courts have repeatedly refused to handcuff the Agency by delaying effective responses. (See, *e.g.*, *City of Quincy*, 163 Ill. App. 3d at 1054, 517 N.E.2d at 36 (and cases cited therein).) As the court stated in *City of Quincy*:

"The legislative policy underlying the adoption of these strict measures is the protection and enhancement of the quality of the environment achieved through prompt alleviation of environmental damage which poses serious endangerment to the public health and welfare." 163 Ill. App. 3d at 1053, 517 N.E.2d at 35.

It is not unreasonable to assume that the earlier action is taken, the lesser the likelihood of widespread contamination and damage. Preenforcement judicial review would hamper this process at great cost to the environment and to public safety. Where great public detriment or inconvenience is likely to result from interfering with the proceeding of the inferior tribunal, the writ of *certiorari* should not issue. (*Connolly v. Upham* (1950), 340 Ill. App. 387, 92 N.E.2d 207.) Allowing preenforcement judicial review in pollution cases could delay cleanup by months or even years.

In addition, National Marine has not suffered a substantial injury or injustice so as to merit equitable relief. (*Stratton*, 133 Ill. 2d at 428, 551 N.E.2d at 646.) It alleges that it has had difficulty selling the 52 acres while the title is clouded by the Agency's notice. National Marine, however, admits that it could sell the land but that now it would have to comply with the Responsible Property Transfer Act of 1988 (Ill. Rev. Stat. 1991, ch. 30, par. 901 *et seq.*). National Marine therefore does not claim that it cannot sell the parcel; it merely claims that the value has substantially decreased. National Marine's being inconvenienced by having difficulty selling its land cannot override the public's interest in prompt cleanup of hazardous materials. This interest would be thwarted by allowing preenforcement judicial review by way of a writ of *certiorari*.

Courts have allowed the use of a writ of *certiorari* to review decisions of the Agency only in extremely limited situations. In *National Marine Service Inc. v. Environmental Protection Agency* (1983), 120 Ill. App. 3d 198, 458 N.E.2d 551, for example, the Agency denied a requested certification pursuant to its authority under section 4(m) of the Act. (Ill. Rev. Stat. 1981, ch. 111½, par. 1004(m).) The fourth district noted that the Act specifically adopted the Administrative Review Law and gave the Board the authority to review the denials of certain enumerated permits. However, the Board was not expressly granted authority to review denials of this type. Furthermore, the appeals allowed under the Administrative Review Law were limited to ones taken from a Board decision or from the denial of a permit. Because the petitioner did not fall into any of those categories, it was left without an avenue of review. It had clearly suffered an injury because without the certification, it could not acquire certain permits. The petitioner was not re-

quired to exhaust its administrative remedies because there simply were no remedies available. Therefore, the court allowed the writ to issue.

Here, the facts are much different. National Marine has suffered no recognizable injury. Further, there still is an adequate avenue of review available to it. Before National Marine can be made to pay any money, the Agency must prove its case before the Board. This would include proving that these 64 plus acres constituted a "facility." Moreover, present in this case is the fact that there is a great public interest in immediate cleanup of the hazardous waste, a factor not presented to the fourth district.

To allow a writ of *certiorari* in a situation such as this would open a virtual Pandora's box of litigation. Each time the Agency issues a notice, the allegedly responsible party could petition for preenforcement judicial review by means of a writ of *certiorari*. The parties could challenge any one of a number of determinations made by the Agency, *e.g.*, size of the facility, level of pollution, etc. The result would be a greatly reduced speed in alleviating pollution and a greatly increased court docket.

The issuing of a section 4(q) notice is not an unreviewable action; it can be reviewed by the Board at a cost-recovery action and then by this court by way of administrative review.

The Agency has the authority to investigate possible violations of the Act. It also has the power and the duty to issue section 4(q) notices and to prosecute offenders before the Board. It is not disputed that the Agency has the authority to issue a notice. All that is disputed is the inclusion of the 52 plus acres in this notice. This is a factual question best left to the Agency. It is better equipped than the courts to investigate and to make that determination. The Agency is empowered to make such investigatorial and prosecutorial decisions. If its decision is erroneous, it can be corrected by the Board or by this court by way of administrative review. The trial court did not abuse its discretion in holding that the writ of *certiorari* should not issue.

For the foregoing reasons, I respectfully dissent.