NATIONAL MARINE SERVICE INCORPORATED, Plaintiff-Appellant, *v.* THE ENVIRONMENTAL PROTECTION AGENCY *et al.*, Defendants-Appellees—(Illinois-American Water Company, Intervenor-Appellee).

Fourth District No. 4—83—0306

Opinion filed December 20, 1983.

Harley Hutchins and Sheldon Karasik, both of Mayer, Brown & Platt, of Chicago (Brown, Hay & Stephens, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Leslie J. Rosen, Assistant Attorney General, of counsel), for appellees Environmental Protection Agency and Richard J. Carlson.

Eugene H. Bernstein and Mark C. Furse, both of Isham, Lincoln & Beale, of Chicago, for appellee Illinois-American Water Co.

PRESIDING JUSTICE MILLS delivered the opinion of the court:
Barge fleet.
Certification by the Illinois EPA sought.
It was denied.
Circuit court held it had no jurisdiction.
We cannot agree.
We reverse and remand.
A complaint was filed against the Illinois Environmental Protection Agency seeking a declaratory judgment, injunctive relief, and writ of *certiorari*. The suit challenged the Illinois Environmental Protection Agency's (IEPA) denial of Federal Clear Water Act, section 401, certification pertaining to plaintiff's proposed barge fleeting facility. IEPA then filed a motion to dismiss based on lack of subject-matter jurisdiction and was joined in the motion by intervenor. The motion to dismiss was granted by the circuit court and this appeal follows.

## I. The Facts
On March 20, 1981, National Marine Service Incorporated applied to the United States Army Corps of Engineers for a dredge and fill permit pursuant to section 404 of the Federal Water Pollution Control Act amendments of 1972 (33 U.S.C. sec. 1344 (Supp. I 1977)). Plaintiff sought this permit in order to construct a barge fleeting facility on Chouteau Island in the Mississippi River. As part of the permit process, the plaintiff also applied for certification from the IEPA. The IEPA denied certification on April 28, 1982, and on October 20, 1982, plaintiff filed a complaint for declaratory judgment, injunctive relief, and writ of *certiorari* in the circuit court alleging that the IEPA had misinterpreted Federal law and had misapplied State law in denying certification. On January 4, 1983, the IEPA filed a motion to dismiss, alleging that the circuit court lacked subject matter jurisdiction. Then on February 17, 1983, Illinois-American Water Company filed a peti-

tion to intervene. The motion was allowed and intervenor joined in the motion to dismiss for lack of subject matter jurisdiction.

On March 8, 1983, the trial court issued a memorandum opinion allowing the motion to dismiss, stating:

> "The court finds that review of decisions by the Illinois Environmental Protection Agency taken under section 4(m) of the Illinois Environmental Protection Act (Ill. Rev. Stat. 1981, ch. 111½, par. 1004(m)), to determine whether or not to certify compliance with the provisions of the Federal Clean Water Act, (33 U.S.C. 1251, *et seq.*), are reviewable under the Illinois Administrative Review Act, (Ill. Rev. Stat. 1981, ch. 110, pars. 3—101, *et seq.*), and that such decisions to certify *vel non* must be reviewed according to the procedure set forth therein as modified by and in accordance with Sec. 41 of the Illinois Environmental Protection Act (Ill. Rev. Stat. 1981, ch. 111½, par. 41), and that this court is without jurisdiction of the instant cause."

This appeal challenges that judgment.

## II. THE STATUTES

Seldom does a term of court pass but that we are called upon to supply a missing rafter, joist, or east wall of the house of IEPA. The blueprints for the repair here are found among several State and Federal statutes which we will now discuss.

Section 404 of the Federal Clean Water Act (33 U.S.C. sec. 1344 (Supp. I 1977)) (FCWA) requires that prior to discharging dredge or fill material into navigable waters, companies must procure a dredge and fill permit from the United States Army Corps of Engineers. Section 401 of the FCWA (33 U.S.C. sec. 1341 (Supp. I 1977)) (section 401 certification) provides that no permit may be issued by the Corps unless the State where the construction is to take place first certifies that any discharge which may emit from the site is within tolerances set by various sections of the FCWA and any other appropriate requirements of State law. Section 4(m) of the Environmental Protection Act (Ill. Rev. Stat. 1981, ch. 111½, par. 1004(m)) (Act) designates the IEPA as the water pollution agency for all purposes of the FCWA. It also empowers the IEPA to take all appropriate actions to properly integrate State and Federal efforts at pollution control. Section 41 of the Act (Ill. Rev. Stat. 1981, ch. 111½, par. 1041) adopts the provisions of the Administration Review Law as controlling judicial review:

> "Any party to a Board hearing, any person who filed a complaint on which a hearing was denied, any person who has been denied a variance or permit under this Act, and any party ad-

versely affected by a final order or determination of the Board may obtain judicial review, by filing a petition for review within thirty-five days after entry of the order or other final action complained of, pursuant to the provisions of the 'Administrative Review Act,' approved May 8, 1945, as amended and the rules adopted pursuant thereto, except that review shall be afforded directly in the Appellate Court for the District in which the cause of action arose and not in the Circuit Court. Review of any rule or regulation promulgated by the Board shall not be limited by this section but may also be had as provided in Section 29 of this Act.
　　　***

No challenge to the validity of a Board order shall be made in any enforcement proceeding under Title XII of this Act as to any issue that could have been raised in a timely petition for review under this Section."

Supreme Court Rule 335 (87 Ill. 2d R. 335) establishes the procedures to be followed when the appellate courts review cases pursuant to the Administrative Review Law.

The single narrow question before this court is to whom a party— who is denied section 401 certification by the IEPA—should appeal the denial on the grounds that IEPA considered improper matters in its certification process and also misinterpreted the scope of section 401 of the FCWA. Stated otherwise, did the circuit court have jurisdiction by virtue of the plea for common law *certiorari*? This is a question of first impression in Illinois.

### III. THE POTENTIAL REVIEWING BODIES

The parties in their arguments suggest several forums in which plaintiffs might seek review.

#### A. FEDERAL COURTS

 It appears certain that parties to section 401 certification procedures cannot appeal to the Federal courts. Several Federal district courts have denied a Federal forum to similarly situated parties. In *Roosevelt Campobello International Park Com. v. United States Environmental Protection Agency* (1st Cir. 1982), 684 F.2d 1041, the Federal court of appeals agreed that "the proper forum to review the appropriateness of a state's certification is the state court," noting that "federal courts and agencies are without authority to review the validity of the requirements imposed under state law or in a state's certification." (684 F.2d 1041, 1056.) Since Federal courts will not review

State agencies' certification decisions, the review must be had at the State level if it is to be had at all. The parties in this appeal variously argue that the proper forum for the appeal is the Pollution Control Board (PCB) (defendants' position and intervenor's alternate position No. 1) or the Appellate Court of Illinois (intervenor's alternate position No. 2) or the circuit court (plaintiff's position). Let us look at them.

### B. POLLUTION CONTROL BOARD

■■ Both the intervenor and the defendants suggest that review of certification denials might properly lie with the PCB. Neither offers any controlling authority for this position. Both rely on public policy arguments and the efficiencies to be gained from maintaining an integrated front in the war against pollution. Plaintiff responds that the PCB is without authority to review section 401 procedures, has previously refused to hear similar cases, and has been sustained in this position by the Appellate Court of Illinois.

### (1) THE *PEABODY COAL* CASE

In *Peabody Coal Co. v. Pollution Control Board* (1977), 49 Ill. App. 3d 252, 364 N.E.2d 929, the issue was the propriety of the PCB's dismissal of a request to have the Board review the IEPA's denial of a State certification which petitioner had sought in order to obtain a National Pollutant Discharge Elimination System permit (NPDES) pursuant to section 402 of the FCWA (33 U.S.C. sec. 1342 (Supp. I 1977)). At the time of the appeal, the actual permits were issued by the Federal government contingent on State certification. The entire NPDES program has since been taken over by the State of Illinois. The PCB refused to hear the appeal, reasoning that the Federal government was the sole source of the permits and that no statutory authority existed which would confer jurisdiction of these matters on the PCB. The appellate court upheld the PCB's determination that it lacked jurisdiction in this matter. The court was of the opinion that the proper course was an appeal under section 509 of the FCWA (33 U.S.C. sec. 1369 (1976)) which provided for review of NPDES proceedings. There is no similar provision for review of section 404 permit procedures, which is the issue before the court in this case.

Both the intervenor and defendants attempt to distinguish *Peabody* on the basis of the types and numbers of permits that were sought. Intervenor argues that Peabody Coal was also seeking State permits, which meant that the PCB was able to pass on the petitioner's pollution potential despite the fact that it lacked jurisdiction to decide whether the IEPA had properly granted State certification

without a hearing. This is a distinction without merit since it is apparent that the finding of lack of jurisdiction was based on the Federal nature of the permit and stood on its own. The lack of a jurisdictional basis was independent of any further participation in the permit proceedings by the PCB.

Defendants' attempt to distinguish *Peabody* is similarly unsatisfactory. The IEPA's position is that since the court was of the view that Federal procedures were available to review NPDES procedures, but none are now available to review section 401 certificates, *Peabody* is "outmoded and inapplicable today." In other words, they would distinguish *Peabody* on the basis that the availability of a Federal forum there made it appropriate for the PCB to refuse to review the EPA's decision but that since no Federal forum is available to plaintiff here, the PCB is the appropriate body to which to turn.

Both of these arguments miss the thrust of *Peabody* which appears to us to be that the PCB, as a creature of the legislature, is bound by its legislative grant of power. We read *Peabody* as holding that where a Federal permit system is at hand, the PCB, absent a statutory grant of power, is without authority to become involved in reviewing the State certification process which must be followed before a Federal permit may issue. This reading is consistent with the restrictive view of the PCB's authority to oversee the IEPA's activities which was noted by our supreme court in *Landfill, Inc. v. Pollution Control Board* (1978), 74 Ill. 2d 541, 387 N.E.2d 258. The court there specifically spoke to the relationships between the PCB and the IEPA when viewed in the context of their respective roles. The court stated:

> "The argument [concerns] the statutory roles of the Board and the Agency in relation to permits. The Board's principal function is to adopt regulations defining the requirements of the permit system [citation]. The Agency's role is to determine whether specific applicants are entitled to permits [citation]. The need for a technical staff capable of performing independent investigations dictates that the job of administering the permit system be entrusted to the Agency rather than the Board [citation]. If the Board were to become involved as the overseer of the Agency's decision-making process through evaluation of challenges to permits, it would become the permit-granting authority, a function not delegated to the Board by the Act." (74 Ill. 2d 541, 557, 387 N.E.2d 258, 264.)

In light of *Landfill, Peabody* is properly read as holding that the PCB is without authority to hear an appeal from a denial of section 401

certification.

■ Intervenors also launch a broadside fusillade against *Peabody*, arguing that it was wrongly decided by both the PCB and the court and should be overruled or ignored. The argument is that the court failed to perceive the proper integration of authority in the certification process as reflected by the State and Federal statutes. Intervenors apparently find immaterial the fact that there is no statutory authority for PCB review of IEPA certification. As the preceding discussion illustrates, this court views the powers of the PCB as limited by statute. We find therefore that where a permit may be granted by the Federal Government only after State certification, the PCB is without authority to review the agency's denial of the certificate, absent a specific grant of such authority.

Defendants make a collateral argument dealing with *Peabody*, which also revolves around the types of permits sought in that case as opposed to the permit sought in this case. Defendants feel that since *Peabody* deals with NPDES permits, and the instant case deals with section 401 certification and dredge and fill permits, petitioner was bound to approach the PCB with its appeal of the denial of the certification in an effort to exhaust its administrative remedies. In defendants' view, the failure to approach the PCB with its request is fatal to petitioner's cause based on the exhaustion doctrine. (See *Illinois Bell Telephone Co. v. Allphin* (1975), 60 Ill. 2d 350, 326 N.E.2d 737.) This argument fails because under our view of *Peabody* there was simply no further administrative remedy to exhaust. It would be wasteful to force them to take their appeal to the PCB only to be denied a forum due to lack of jurisdiction. There is no statutory authority calling upon them to take their complaint to the PCB. The decision not to appeal to the PCB was based on a good-faith attempt at reading and following court precedents. A trip to the PCB would have been both wasteful and futile—considering the decision in the *Peabody* case.

■ Intervenor also argues that since the permit process is indistinguishable from the certification process, section 40 of the Act should be read to call for Pollution Control Board review of section 401 certification even though such review is not part of the statute. Section 40 of the Act (Ill. Rev. Stat. 1981, ch. 111½, par. 1040) empowers the Board to review cases wherein the IEPA has denied specific enumerated permits which are listed in section 39 of the Act (Ill. Rev. Stat. 1981, ch. 111½, par. 1039). The State certificate and Federal permit sought in this case are not among those enumerated. This argument again runs aground of the restricted view Illinois courts take of the powers of administrative agencies. In *White Fence Farm*,

*Inc. v. Land & Lakes Co.* (1981), 99 Ill. App. 3d 234, 424 N.E.2d 1370, the court clearly indicated its view that the PCB, like any other administrative agency, has no greater powers than those the legislature has given it. Since the PCB has not been empowered to review section 401 certification denials, this court will not grant the power through judicial fiat.

### (2) VARIANCE PROCEEDINGS

■ The final path which would lead plaintiff to the PCB is suggested by defendants. In their view, plaintiff might have sought a variance from the sections of the Act which the IEPA felt might be violated by plaintiff's activities. But the argument seems to be based on a misconception of variance procedures. The power to grant variances is set out in section 35 of the Act (Ill. Rev. Stat. 1981, ch. 111½, par. 1035) which provides that variances may be granted by the PCB when it is found that "compliance with any rule or regulation, requirement or order of the Board would impose an arbitrary or unreasonable hardship." In the instant case, plaintiff does not complaint about the existence or propriety of a PCB rule or regulation or a requirement or order of the PCB. Rather, plaintiff complains of the way in which the IEPA interpreted regulations in denying certification. We simply fail to see how a variance would have ever allowed plaintiff to air its grievances.

As the preceding discussion makes clear, we find no merit to any of the arguments which would have taken plaintiff to the PCB for review of a denial of section 401 certification.

### (C) ILLINOIS COURTS OF APPEAL

■ ■ The third suggested forum for review of the denial of section 401 certification is the Illinois courts of appeal. IEPA argued at the hearing that since the effect of a denial of section 401 certification is that the United States Army Corps of Engineers is precluded from granting a dredge and fill permit, the denial of certification was in essence the denial of a permit. Their view is that the denial of this certification is a denial under the Act since the plaintiff herein is a "person who has been denied a variance or permit under the Act." This triggers section 41 of the Act (Ill. Rev. Stat. 1981, ch. 111½, par. 1041) which calls for appeals from denials of permits under the Act to be had pursuant to the Administrative Review Law, but places such appeals in the appellate, as opposed to the circuit, courts. In this appeal, the agency has admitted that "technically, a State permit is *not* in question here" and has dropped this argument. Intervenor has,

however, raised this argument and now urges that section 41 of the Act be applied to this case.

In dismissing plaintiff's suit, the circuit court reasoned that section 41 set forth the method of appeal in this case and that the plaintiff had failed to meet the time of filing requirements. Section 41 of the Act (Ill. Rev. Stat. 1981, ch. 111½, par. 1041) specifically adopts the Administrative Review Law (Ill. Rev. Stat. 1981, ch. 110, pars. 3—101 through 3—112) providing that review shall be in the appellate court for the district in which the cause of action arose and not in the circuit court. Section 41 does not, however, adopt the Administrative Review Law as a means of review for every action taken pursuant to the Environmental Protection Act but is limited to appeals by "[a]ny party to a Board hearing, any person who filed a complaint on which a hearing was denied, any person who has been denied a variance or permit under this Act, and any party adversely affected by a final order or determination of the Board ***." (Ill. Rev. Stat. 1981, ch. 111½, par. 1041.) In intervenor's view, the IEPA has denied plaintiff a permit under the Act by denying section 401 certification.

Plaintiff's response here is similar to its response to the arguments noted above which would have taken it to the PCB. Plaintiff argues that the statute sets out the specific parties who may seek review. It contends that it is not among those parties and therefore may not seek review before the appellate court. Plaintiff claims it is not included on the list since it has never been a party to a PCB hearing, nor has it been denied a permit or variance under the Act. Intervenor then responds that since the Corps of Engineers cannot issue a Federal permit without State certification, plaintiff has been denied a permit under this Act by virtue of the fact that the IEPA has been appointed the water pollution agency for certification purposes.

It seems clear to us that permits and certificates are two different breeds of animal. Black's Law Dictionary defines a *certificate* as a written assurance, or official representation, that some act has or has not been done, or some event occurred, or some legal formality has been complied with. (Black's Law Dictionary 205 (5th ed. 1979).) Black's defines a *permit* as, in general, any document which grants a person the right to do something, a license or grant of authority to do anything. Black's Law Dictionary 1026 (5th ed. 1979).

We note in this case that even if plaintiff had been certified, no construction could have begun until a permit was issued by the United States Army Corps of Engineers. The Corps is bound to carry out full hearings and fact finding before the issuance of the permit and cannot blindly rely on State findings. (See *Sierra Club v. United States*

*Army Corps of Engineers* (2d Cir. 1983), 701 F.2d 1011.) Plaintiff was not denied a permit.

Illinois courts have also adopted the rule that the expression of one thing in the statute which precludes the inclusion of others does so unless such a construction would defeat the plainly indicated purpose of the law-making body. (See, *e.g., City Savings Association v. International Guaranty & Insurance Co.* (1959), 17 Ill. 2d 609, 162 N.E.2d 345.) In this case, the legislature has expressly limited the application of the Administrative Review Law to specific enumerated actions taken by the Pollution Control Board. This effectively excludes actions taken by the IEPA. No plainly indicated purpose of the legislature would be contravened by finding that the appellate courts are not the proper body to review section 401 certification denials.

In fact, the appellate courts are particularly unqualified to hear these proceedings since the certificates may be granted or denied without a hearing and there may be no record on which to base review. (See 5 Ill. Reg. 7899 (July 31, 1981).) This would arguably place the appellate court in the position of becoming a fact-gathering and fact-finding body since there could arise a situation where no record would be available upon which a reasoned decision may be made. We will not create such an intolerable situation.

■ Finally, section 41 of the Act became effective in 1970. The FCWA became effective in 1972. Prior to 1972 there was no section 401 certification procedure. It hardly seems likely to us that the legislature could have intended to establish review procedures for a legislative scheme which was not even in existence at the time the statute was passed. The intervenor admits that the legislature could not have contemplated review of section 401 certification but urges this court to judicially legislate such review into the Act.

We decline the intervenor's offer to become a super legislature by appointing ourselves as the reviewing body for denial for section 401 certificates.

### (D) THE CIRCUIT COURTS

■ Plaintiff filed its complaint in the circuit court relying for jurisdiction on a writ of common law *certiorari.* The circuit court held that the Administrative Review Law applied but that the case was not timely filed since it was beyond the 35-day limit. Neither of the parties opposing plaintiff argue that *certiorari* is improper if neither the PCB nor the appellate court can hear this action. As the previous discussion indicates, we are of the opinion that the PCB was without statutory authority to review IEPA determinations and that section

41 of the Act did not contemplate section 401 certification denials so that the appellate courts are also without authority to review the procedures.

Where the Administrative Review Law is not applicable to administrative decisions, the writ of common law *certiorari* survives as an available means of review. (*Smith v. Department of Public Aid* (1977), 67 Ill. 2d 529, 367 N.E.2d 1286.) Similarly, where the provisions of the Administrative Review Law do not apply to a given hearing, the 35-day time limits for review are also inapplicable. (*Sullivan v. Board of Fire & Police Commissioners* (1981), 103 Ill. App. 3d 167, 430 N.E.2d 636.) Plaintiff here filed his complaint on October 20, 1982. The IEPA had denied certification on April 28, 1982. No cases indicating the exact limitations period for the appeal of the administrative decisions of agencies which are not covered by the Administrative Review Law were found. Nonetheless, this cause may be viewed as an independent civil action. Civil actions which are not otherwise provided for must be filed within five years from the time that the cause of action arose. (Ill. Ann. Stat., ch. 110, par. 13—205, at 246 (Smith-Hurd Supp. 1982).) Since the cause was filed within five years, the action was properly before the circuit court. The decision to dismiss the complaint as not timely filed was in error.

Therefore, we reverse the decision of the trial court and remand the cause for proceedings pursuant to common law *certiorari* to determine whether the IEPA acted properly in denying plaintiff's application for section 401 certification.

Our disposition of this case renders moot the other arguments raised by plaintiff before this court.

Reversed and remanded.

GREEN and WEBBER, JJ., concur.