C. RICHARD DAHL *et al.*, Plaintiffs-Appellants, v. FEDERAL LAND BANK ASSOCIATION OF WESTERN ILLINOIS, f/k/a Federal Land Bank Association of Monmouth, *et al.*, Defendants-Appellees.

Third District   No. 3—90—0075

Opinion filed May 8, 1991.—Rehearing denied June 20, 1991.

Law Offices of John H. Bisbee, of Macomb (John H. Bisbee, of counsel), for appellants.

Kavanagh, Scully, Sudow, White & Frederick, P.C., of Peoria (David J. Dubicki, of counsel), for appellees.

JUSTICE GORMAN delivered the opinion of the court:

This case is before the court on the pleadings. Plaintiffs C. Richard Dahl and Kathlene Dahl commenced their cause of action September 28, 1988. Following removal of the cause of action to the Federal court and remand back to the circuit court, the defendants moved to dismiss plaintiffs' first amended complaint pursuant to sections 2—615 and 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, pars. 2—615, 2—619).

The first amended complaint consisted of three counts: breach of contract, intentional infliction of emotional harm, and duress. The defendants, Federal Land Bank Association of Western Illinois (Federal Land Bank), Farm Credit Bank of St. Louis (Farm Credit Bank), and Central Production Credit Association (Central), filed motions to dismiss. Defendants Federal Land Bank and Farm Credit Bank asserted that the breach of contract action was barred by release. Defendant Central asserted that the plaintiffs had settled any breach

of contract claim with Central. All defendants asserted that plaintiffs' settlements with them were voluntary as a matter of law, and that the plaintiffs by their conduct had ratified the settlement agreements and waived any right to sue. The defendants took the position that any claim for intentional infliction of emotional harm was barred by the applicable statute of limitations. They further noted that Illinois does not recognize a cause of action for duress, and that since these plaintiffs had legal remedies available to them with regard to the transactions complained of, duress should not be available to plaintiffs even if it were recognized as a cause of action in this State. The trial court considered the first amended complaint, the motions, affidavits, counteraffidavits, and memoranda, and, following a hearing, issued a memorandum opinion on December 14, 1989, followed by an order dated December 26, 1989, granting the defendants' motions pursuant to section 2—619 of the Code of Civil Procedure and dismissing the first amended complaint as to each of the defendants with prejudice.

■■ A section 2—619 motion to dismiss admits, for the purpose of the motion, the facts well pleaded in the complaint. (*Higgins v. Kleronomos* (1984), 121 Ill. App. 3d 316, 459 N.E.2d 1048.) A defendant in support of its motion is permitted to assert by affidavit those matters showing that a claim has been released or satisfied or barred by other affirmative matter. Insofar as affidavits filed on behalf of defendants' motions to dismiss pursuant to section 2—619 establish documents that are part of the transactions complained of in the complaint, we find those affidavits to be proper for the court's consideration.

The facts of this dispute are as follows. In 1985, the plaintiffs were engaged in farming and, prior to that time, had obtained credit either from or through all of the defendants herein. The plaintiffs owned several parcels of farmland in April 1985. Three of those parcels were separately mortgaged, .ecuring separate debts owed by the plaintiffs to Farm Credit Bank. The plaintiffs had missed the annual payments on two of those parcels, one in November 1984 and one in March 1985. In addition to those debts, the plaintiffs at that time owed a large sum of money to Central. In April 1985, fearing he would not be able to make the annual payment on the third parcel (which would be due in June 1985), Mr. Dahl met with representatives of Federal Land Bank and Central to try to work out a payment plan so that the plaintiffs could continue farming while they paid their debts. As a result of that meeting, it was agreed that if the plaintiffs executed a supplemental mortgage on all three parcels and on an additional 22-acre parcel they owned, and made certain payments to

Farm Credit Bank and Central, then the defendants would forbear pursuing legal remedies available to them to collect the debts owed them and would accept the payments made in accordance with the payment plans to satisfy the debts. The plaintiffs executed the supplemental mortgage which was then duly recorded. The plaintiffs also made payments in accordance with the payment plans.

In June 1985, Central informed the plaintiffs that it was setting a due date of September 15, 1985, after which date it would institute legal action against the plaintiffs if the debt owed Central were not paid in full. This was in direct contravention to the terms of the April 1985 agreement, which permitted the plaintiffs to repay Central in five annual installments, the first installment being due before November 15, 1985. Central made repeated demands that it be paid by September 15, and demanded that the plaintiffs sell items pledged as collateral in order to help raise the necessary money. As a result of these repeated demands, Mr. Dahl became severely distressed and upset, lost 100 pounds, became ill and confused, and over the summer and fall of 1985 lost much of the use of his legs. He did manage to pay most of the debt that was due to Central, but not all of it, by September 15, 1985. Central continued to pursue the matter, and Mr. Dahl continued to suffer, after that date. In early December, Mr. Dahl was told by Philip Bell, an officer of Central, that Mr. Dahl would need to have an attorney draw up a "consideration binder" in order for the plaintiffs and Central to settle the remaining debt. Mr. Dahl contacted an attorney in December, seeking the attorney's assistance in settling the matter with Central to "get them off his back." An agreement was worked out and executed before the end of January 1986, whereby Central released plaintiffs from liability on their loan in exchange for a sum of money, an automobile, and a baler.

On or about December 31, 1985, Robert Young, an officer of Federal Land Bank, telephoned Dahl and informed him that Young was about to take legal action to put the plaintiffs "out in the road" unless plaintiffs deeded two of the three parcels to the Farm Credit Bank. This was in contravention to the April 1985 agreement, whereby the Federal Land Bank (acting to collect the debt owed to the Farm Credit Bank) agreed to a payment plan whereby plaintiffs would have a five-year period to pay back the overdue payments while still paying the regular annual payments on the three parcels as they became due. Young repeatedly telephoned Dahl over the next few months, all while Dahl was suffering from the illness already described. On or about March 16, 1986, the plaintiffs deeded two of the three principal parcels to Farm Credit Bank, and executed a new

mortgage on the third parcel to secure debt on that parcel plus the arrearage on the other parcels. In return for the two parcels, Farm Credit Bank released plaintiffs of the indebtedness remaining on those two parcels. Plaintiffs made the payments on the new mortgage for at least three years subsequent to its making.

■ We first address the propriety of the trial court's dismissal of the first count of the first amended complaint, *viz.*, for breach of contract. The plaintiffs seek contract damages for the defendants' breach of their duty of "good faith and fair dealing" as regards the April 1985 agreement. The plaintiffs by their conduct have, in our view, foreclosed their right to such recovery. With respect to defendants Federal Land Bank and Farm Credit Bank, the trial court correctly determined that the release executed by the plaintiffs in March 1986 as part of the "Agreement for Deed in Lieu of Foreclosure and Reduction and Reamortization of Loan" effectively barred the claim for breach of contract in connection with that agreement. Plaintiffs will not be permitted to simultaneously treat that entire transaction as having been in breach of the earlier contract, to accept the benefits it bestowed on them, and to reject its release provisions. Assuming the relevant defendants had procured plaintiffs' agreement to the terms of that transaction by duress, such duress would not aid the plaintiffs in their breach of contract claim because the plaintiffs have never sought, nor do they now seek, to have that transaction set aside.

■ With respect to the breach of contract claim against defendant Central, plaintiffs similarly do not seek to avoid the agreement of January 1986, and therefore are bound by it. The Dahls allege they were damaged as a result of the conveyance of certain assets to Central in settlement of Central's claim. Although a detailed release comparable to that given the Farm Credit Bank was not given Central, the Dahls settled any claim they had against Central with regard to the conveyance of their assets to Central. This is shown by attorney Grimsley's letter of December 30, 1985, to Philip Bell of Central. The letter is an offer of settlement and provides in pertinent part:

> "As we have discussed, my clients believe that they have a legitimate defense against any continued claim made against them by the Production Credit Association, and have received such advise [*sic*] from competent counsel.
>
> We would, that fact notwithstanding, offer to settle the debt with the Production Credit Association by returning to it, *free and clear of claims and demands*, the collateral of Production Credit Association that we presently hold, being a check representing the balance of the receipt from the 1985 crop and the

automobile the PCA has a security interest in. Accordingly, we hereby tender to PCA this collateral as full and complete satisfaction of my clients' debt to the PCA." (Emphasis added.)

Plaintiffs' offer was accepted and the property conveyed to Central.

■ Turning now to the second count of the first amended complaint, *viz.*, for intentional infliction of emotional harm, we note that section 13—202 of the Code of Civil Procedure provides for a two-year period after the cause of action accrues within which to commence an action for damages for "an injury to the person" (Ill. Rev. Stat. 1987, ch. 110, par. 13—202). In our view, intentional infliction of emotional harm is a species of "injury to the person" and is therefore governed by the limitation period set out in section 13—202 of the Code of Civil Procedure. (Accord *Feng v. Sandrik* (N.D. Ill. 1986), 636 F. Supp. 77.) In this case suit was not commenced until September 1988, clearly more than two years after all the alleged wrongdoing by the defendants would have taken place, and so the circuit court properly held the cause of action stated in the second count of the first amended complaint to be barred by the statute of limitations.

■ As for the third count of the first amended complaint, plaintiffs urge this court to establish a cause of action for duress. As plaintiffs correctly point out, no Illinois court has to date recognized duress as an independent cause of action giving a right to affirmative relief as opposed to defensive relief. Duress has been available to avoid obligations, but not as an independent cause of action for damages. In the "Introductory Note on Duress and Undue Influence" to sections 174 through 177 of the Restatement (Second) of Contracts, the author of that commentary states:

"Since duress and undue influence, unlike deceit, are not generally of themselves actionable torts, the victim of duress or undue influence is usually limited to avoidance and does not have an affirmative action for damages." (Restatement (Second) of Contracts, "Introductory Note on Duress & Undue Influence," at 474 (1981).)

We decline to create a new cause of action urged upon us by plaintiffs.

In summary, the judgment of the circuit court is affirmed.

Affirmed.

STOUDER, P.J., and BARRY, J., concur.