SHIRLEY GREEN, Plaintiff-Appellant, v. HENRY BERNSTEIN, Defendant-Appellee.

First District (5th Division)   No. 1—91—2169

Opinion filed November 20, 1992.

Gary B. Friedman, Ltd., of Chicago (Jay R. Giusti, of counsel), for appellant.

Rooks, Pitts & Poust, of Chicago (Patricia Cari Nowak, of counsel), for appellee.

PRESIDING JUSTICE McNULTY delivered the opinion of the court:

Plaintiff Shirley Green appeals the trial court's entry of judgment in favor of defendant Dr. Henry Bernstein in this medical malpractice action. Specifically, plaintiff appeals the trial court's finding that the jury's answer to the special interrogatory was inconsistent with and, therefore, controlled the general verdict on behalf of plaintiff.

According to the evidence adduced at trial, plaintiff injured her right knee at work on March 26, 1982. She visited Dr. Bernstein, an orthopedic surgeon, on March 29, 1982, and Dr. Bernstein recommended that plaintiff undergo arthroscopic surgery on her knee, both for treatment and diagnostic purposes.

Plaintiff was admitted to Gottlieb Memorial Hospital, and on April 2, 1982, Dr. Bernstein performed arthroscopic surgery on plaintiff's knee. During this surgery, Dr. Bernstein inserted two drainage tubes in plaintiff's knee. Plaintiff claimed that she was unaware that these tubes were placed in her knee until April 3, 1982, when Dr. Bernstein told plaintiff that he was removing the drainage tubes from her knee. Plaintiff continued to experience pain and swelling in her knee.

In June of 1982, plaintiff was involved in an automobile accident and was admitted to Northwest Hospital. Dr. Cheronis treated plaintiff for the neck and back injuries she received from the accident. While in the hospital, plaintiff requested that an X ray be taken of her right knee. There was conflicting testimony as to when plaintiff learned that a drainage tube remained in her knee. Plaintiff testified that nobody told her the results of the X ray and that she never asked about the X ray, assuming that if the X ray revealed anything unusual, she would have been notified. Dr. Cheronis, however, testified that although he made no notation in the hospital records or his own patient records regarding the results of the X ray, he did inform plaintiff within a day or two of the June 23, 1982, X ray that the X ray revealed the presence of one 3.5-centimeter piece of a drain in plaintiff's right knee.

After plaintiff's discharge from Northwest Hospital she continued to experience pain and swelling in her right knee and continued to see Dr. Bernstein regarding the problem. Plaintiff testified that in March 1983 she reviewed her Northwest Hospital records and discovered a reference to the presence of a drainage tube in her knee. She then showed the records to Dr. Bernstein and Dr. Bernstein recommended removal of the drain fragments. In November 1983 plaintiff had two procedures performed by Dr. Bracketto to have the tube fragments removed.

Plaintiff sued defendant for malpractice and the jury returned a verdict in favor of plaintiff and against defendant, assessing damages for the pain and suffering experienced and reasonably certain to be experienced in the future as a result of the injury in the amount of $85,000. A special interrogatory was submitted to the jury which inquired: "Did Ms. Green know on or before June 25, 1982 that there was a drain in her right knee?" The jury answered "Yes" to the special interrogatory. Judgment was entered on behalf of defendant and against plaintiff.

We must determine whether the trial court properly found that the jury's answer to the special interrogatory was inconsistent with the general verdict and that plaintiff's suit was barred by the statute of limitations. For the reasons which follow, we affirm the decision of the trial court.

Plaintiff now raises two objections to the form of the special interrogatory. She first contends that the special interrogatory was ambiguous since it could have been interpreted to ask whether plaintiff knew before June 25, 1982, that drains were *placed* in her knee or to ask whether plaintiff knew before June 25, 1982, that the tubes were *retained* in her knee. Plaintiff next contends that the special interrogatory was improper since it only asked when plaintiff obtained knowledge of the injury and not when she obtained knowledge that the injury was wrongfully caused.

During the instruction conference, when the special interrogatory was initially tendered to the court by counsel for defendant, counsel for plaintiff informed the court that he had no objection to the interrogatory. The attorneys then discussed whether June 25, 1984, fell on a Saturday or Sunday and the fact that plaintiff could not be held to have filed her complaint on a weekend. Counsel for defendant then withdrew the special interrogatory in order to determine on what day June 25, 1982, fell. After investigation, the special interrogatory was resubmitted to the court at which time the only response offered by plaintiff's counsel was "I just have an objection."

■ Plaintiff's general objection was simply insufficient for purposes of preserving his objections for appeal. It is well settled that a failure to specifically object to a special interrogatory will waive any objection in the giving of that special interrogatory. (*LaPook v. City of Chicago* (1991), 211 Ill. App. 3d 856, 570 N.E.2d 708; *Falkenthal v. Public Building Comm'n* (1982), 111 Ill. App. 3d 703, 444 N.E.2d 498.) It is thus abundantly clear that plaintiff waived any objection to the special interrogatory since none of the specific issues raised in this appeal were raised by plaintiff's counsel at the instruction conference.

We also note that even if plaintiff had not waived her objections to the special interrogatory, these objections would not have been successful. Counsel's arguments to the jury made it perfectly clear that the special interrogatory referred only to the date plaintiff discovered that the tubes had been retained, and not to the date plaintiff discovered the tubes had been inserted. Furthermore, plaintiff cites *Aspegren v. Howmedica, Inc.* (1984), 129 Ill. App. 3d 402, 472 N.E.2d 822, as supportive of her argument that the special interrogatory should have asked both when plaintiff discovered her injury and when plaintiff discovered that the injury may have been wrongfully caused. However, when an injury is caused by a sudden, traumatic event, the cause of action accrues and the limitations of the statute begin to run on the date the injury occurs. (*Bates v. Little Co. of Mary Hospital* (1982), 108 Ill. App. 3d 137, 438 N.E.2d 1250.) The classification of an injury as "traumatic" or "nontraumatic" only aids in the determination of when plaintiff discovered or should reasonably have discovered that the injury was caused by a defendant's wrongful conduct. *Kristina v. St. James Hospital* (1978), 63 Ill. App. 3d 810, 380 N.E.2d 816.

Based on the facts here, we find that plaintiff's knowledge that a drainage tube remained in her knee was sufficient to put plaintiff on notice that the injury was negligently caused. In fact, plaintiff's counsel admitted in his closing argument:

"If Shirley Green really knew that those drain fragments were in her knee, I think we all know she would have complained to Dr. Bernstein. She would have brought it up in some manner ***. If Shirley Green would have known, she would have done something. It's just illogical that she would have known and just sat around."

Plaintiff's knowledge that the tubes remained in her body imparted to plaintiff the knowledge that her injury was the result of a traumatic event and such knowledge triggered the running of the period of limitation.

Accordingly, the only necessary inquiry for the jury was whether plaintiff knew she had a drain in her knee on or before June 25, 1982. Faced with the conflicting testimony of plaintiff and Dr. Cheronis, the jury obviously believed the testimony of Dr. Cheronis that he had advised plaintiff of the X-ray report on or before June 25, 1982. It is not our position to second guess the jury's determination of the credibility of witnesses, nor the decisions they make from their credibility determinations. *Perry v. Storzbach* (1990), 206 Ill. App. 3d 1065, 565 N.E.2d 211.

Finally, plaintiff cites *Daly v. Carmean* (1991), 210 Ill. App. 3d 19, 568 N.E.2d 955, for the principle that a continuing course of treatment for the same condition tolls the triggering of the medical malpractice statute of limitations. Although plaintiff continued to be treated by Dr. Bernstein for the same condition through September 15, 1983, plaintiff has neglected to note that the continuous care doctrine tolls the statute of limitations until the last day of treatment unless plaintiff discovered earlier that her treatment had been negligent. (*Neaterour v. Holt* (1989), 188 Ill. App. 3d 741, 544 N.E.2d 846.) Given the fact that the jury responded affirmatively that plaintiff knew of her cause of action on or before June 25, 1982, plaintiff had two years from June 25, 1982, within which to file suit. (Ill. Rev. Stat. 1989, ch. 110, par. 13—212(a).) Unfortunately, plaintiff did not file her complaint until June 26, 1984. Accordingly, the trial court properly found that based on the jury's answer to the special interrogatory, plaintiff's claim was time-barred and entered judgment in favor of the defendant.

Affirmed.

LORENZ and MURRAY, JJ., concur.