John W. SULLIVAN and Susan Sullivan, Plaintiffs,

v.

William Lesley CHESHIER, Defendant.

No. 93 C 0047.

United States District Court, N.D. Illinois, E.D.

Feb. 28, 1994.

---

Thomas P. Ward, Lorijean G. Oei, McBride, Baker & Coles, Chicago, IL, for plaintiffs.

Eric A. Oesterle, Susan W. Glueck, Sonnenschein, Nath & Rosenthal, Alan J. Mandel, Alan J. Mandel, Ltd., Chicago, IL, for defendant.

*MODIFIED ON RECONSIDERATION
FEBRUARY 23, 1994*

## MEMORANDUM OPINION
## AND ORDER

ZAGEL, District Judge.

John W. Sullivan and Susan R. Sullivan married and had five children, the fourth is Kathleen Sullivan who, as an adult, consulted a psychologist, William Lesley Cheshier. Under hypnosis she remembered sexual abuse by an older sibling and, later, in the presence of the psychologist she told this to her parents. Estrangement followed, and the Sullivans sue the psychologist for causing it.[1] The case was filed under seal but both sides concurred with the lifting of the seal.

Dr. Cheshier, who received a doctorate in psychology from Saybrook Institute in 1986, engaged in the unlicensed practice of psychology. This he might be legally able to do if he does not represent that he is a clinical psychologist. Dr. Cheshier told the Sullivans of his training, of his proficiency at hypnosis and ability to render psychotherapy. The

---

1. The claims are made under state law. The plaintiffs are Floridians and the defendant is an Illinoisan. There is diversity and the damages sought exceed $50,000. The challenged actions of defendant occurred in Cook County Illinois.

information sheet he provides to patients states "although Dr. Cheshier is a member of the American Psychological Association, he has chosen not to be registered as a clinical psychologist."

Kathleen Sullivan, now 25, began therapy with Dr. Cheshier in September 1990, when she was 23. On October 22, 1990 she and her parents met in Dr. Cheshier's office, where she said she believed she had been sexually abused as a child by one of her older siblings. Dr. Cheshier told her parents that through hypnosis she had discovered her repressed memories of abuse.[2]

Three days later, the Sullivans began a continuing consultation with a psychiatrist in Florida. By early November Dr. Cheshier received a call from a lawyer, Thomas Reynolds. He told Dr. Cheshier that he represented the Sullivans and that he would be taking action by court order, if necessary, to have Kathleen Sullivan evaluated psychologically. John Sullivan wrote to Kathleen Sullivan (with a copy delivered to Dr. Cheshier). In the letter he said, in part, "I do not deny that there could be a problem in the past involving one of your siblings ... I am taking action against Doctor Cheshier for the damages he has done and is doing to those you love."

The Sullivans did try to see or speak with Kathleen Sullivan after October 30, 1990 but she refused contact with them. Her stated reason for doing so was Dr. Cheshier's advice not to discuss her memories with anyone who did not accept them. The relationship between parents and child have been quite strained, and there is no longer regular contact that all had before October 1990.

In early November Kathleen Sullivan then retained her own attorney, Thomas Demetrio, because her "father [was] threatening to sue her psychotherapist and try to force her to see a psychiatrist of his own choosing." Her lawyer pre-empted this by referring her to a licensed psychiatrist, Richard K. Baer, M.D. for an evaluation. Dr. Baer's report of

November 12 was provided to her and her parents' attorneys. The report said in part.

> Dr. Cheshier's discussion of Miss Sullivan seemed well-informed clinically, and very well intentioned. He seems clearly to have her best interests at heart.

.     .     .     .     .

> Overall, he did not give any indication he was doing Miss Sullivan any harm. Indeed, she seems to be thriving with his help, and they apparently have a strong therapeutic relationship.... the therapy is going well....

Dr. Cheshier characterizes his therapeutic approach as "based upon the idea that emotions which motivate unhealthy behavior or thinking are always unknown to the patient. The therapist's responsibility is to uncover these emotions and help the patient see them. These emotions are unknown because they learn (either directly or indirectly) that these emotions are unjustified ('wrong')." The Sullivans say there is no scientific proof that reliable memories can be entirely repressed and uncovered by hypnosis. They offer evidence that science shows (1) memory is not a pure recording device, the data of which is preserved for hypnotically induced playback and (2) what we call memory is, in part, reconstruction of the past based on what the owner of the memory believes rather than knows what happened. In simple terms, memory is not a synonym for recall.

The Sullivans complained to the Illinois Department of Professional Regulation in early January 1991.

On January 6, 1993 the Sullivans filed this lawsuit. They also filed, about six months later, a healing arts malpractice affidavit from a psychiatrist who based his opinion solely upon statements made by the Sullivans. It is fair to say that Kathleen Sullivan opposes this lawsuit and makes no claim of her own. She has filed an affidavit attesting to "an extremely helpful, therapeutic rela-

---

**2.** This meeting was difficult. Some of the details appear in the record but no legal purpose would be served by their repetition now. It suffices to say that Kathleen Sullivan believed then (and now) in the truth of her recollections and the

accused sibling categorically denies their truth and the Sullivans can find nothing to corroborate the accusations in any of the things said to them by their other children, their household staff, or the children's doctors.

tionship with Dr. William Cheshier, which my parents forced me to terminate."

The Sullivans seek recompense under various theories for the loss of their daughter's society, for the intentional and reckless infliction of emotional distress and for the injury to their family relationship.

Dr. Cheshier says the claims are barred by the statute of limitations and, besides, are unprovable. He seeks summary judgment. The standards for summary judgment are well known. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ Dr. Cheshier reads the complaint as asserting personal injuries arising from the October 22, 1990 meeting. Illinois requires such claims to be brought within two years. 735 ILCS 5/13–202. The period of limitations began running, at the latest, says Dr. Cheshier, on November 6, 1990 when John Sullivan wrote, "I am taking action against Dr. Cheshier for the damages he has done and is doing to you and to those you love." On that day John Sullivan knew he had been injured, believed he had a legal remedy and had hired a lawyer. *See Fetzer v. Wood*, 211 Ill.App.3d 70, 155 Ill.Dec. 626, 632, 569 N.E.2d 1237, 1243 (1991). As a fallback, it is said that the statute surely began to run by January 2, 1991 when John Sullivan complained to the Illinois Department of Professional Regulation. The fact that Dr. Cheshier may have continued to treat Kathleen Sullivan does not extend the start of the limitation period beyond the date that the malpractice was discovered. On this record, I would find that the latest date for discovery is January 2, 1991. On October 22, 1990 the plaintiffs could not have discovered the wrongdoing—they may have considered whether Kathleen Sullivan was speaking the

truth. Even the threat of November 6, 1990 may not establish "discovery," but it is hard to see how one who files a complaint with the state can deny having discovered the tort. *Green v. Bernstein*, 238 Ill.App.3d 656, 179 Ill.Dec. 668, 606 N.E.2d 500 (1992). This suit was filed on January 6, 1993.

■ The Sullivans meet this argument by denying the applicability of the two-year limitation period.[3] They begin with a defense of the Public Nuisance claim, the last count of the complaint. The theory is simple. The Illinois Clinical Psychologist Licensing Act ("CPLA") defines clinical psychology as "treatment of mental, emotional, behavioral or nervous disorder ... [and] includes ... hypnosis ... when ... used for the purpose of ... the amelioration of psychological disorders of individuals or groups." 225 ILCS 15/2(5). One could conclude that Dr. Cheshier used hypnosis to ameliorate Kathleen Sullivan's psychological disorder and thus practiced clinical psychology. In *Corgan v. Muehling*, 143 Ill.2d 296, 158 Ill. Dec. 489, 497, 574 N.E.2d 602, 610 (1991), the Illinois Supreme Court held that the CPLA implies a private right of action for persons injured by one who practices clinical psychology without a license. The approved form of action is public nuisance. The Sullivans argue that causes of action implied by statute are statutory rights of actions. Where the statute does not supply its own limitations period, the period is supplied by the five year catch-all period for statutory actions set forth in 735 ICLS 5/13–205. *Blakeslee's Storage Warehouses, Inc. v. Chicago*, 369 Ill. 480, 17 N.E.2d 1, 4 (1938). This rule is followed. *National Marine Serv., Inc. v. Illinois Environmental Protection Agency*, 120 Ill.App.3d 198, 76 Ill.Dec. 151, 159, 458 N.E.2d 551, 559 (1983); *Mueller v. Bittle*, 321 Ill.App. 363, 53 N.E.2d 56 (1943); *Lyons v. Morgan County*, 313 Ill.App. 296, 40 N.E.2d 103, 104 (1942).

---

3. In their statement of facts the Sullivans make an implied argument that there was no "discovery." They say Dr. Cheshier stopped them from inquiring about when and where abuses occurred. When they did speak with Kathleen Sullivan her descriptions of her abuses varied from time to time. Dr. Cheshier then intervened to prevent or limit further communication. Finally the Sullivans were untutored in psychology

and only later learned that there may be a "false memory syndrome." And, they had to investigate the possible truth of the charges. The reason this implied argument is never made explicit is because it does not work. The statute of limitations gives two years to investigate after discovery that something is wrong. These limitations are triggered by discovery of the claim, not the acquisition of full proof of the case.

Dr. Cheshier maintains that the CPLA claim is one for a statutory penalty. If so, it is governed by the two-year statute. *Mc-Donald's Corp. v. Levine*, 108 Ill.App.3d 732, 64 Ill.Dec. 224, 439 N.E.2d 475 (1982). But it is not so. *Corgan* found an implied claim for compensatory damages implied in the CPLA. This is not a statutory penalty, nor is it injunctive remedy since it is discretionary.

■ Dr. Cheshier says he did not violate the CPLA because the Act says "Nothing ... in this Act shall restrict any person not licensed ... from carrying on any of the activities [of clinical psychology] ... if that person does not represent himself or his services in any manner prohibited by the Act." 225 ILCS 15/2(7). On the issue of "representing," the Act bars the use of the words "psychological," "psychology," "psychologist" or "clinical psychologist" to describe persons or services provided by one who is unlicensed. 225 ILCS 15/2(7). It also bars to unlicensed persons all manner ("in any manner") of holding out as a psychologist or attaching "the title 'clinical psychologist,' ... or any other name or designation that would ... imply that he is able to practice as a clinical psychologist."[4] 225 ILCS 15/3(a).

There is evidence from which a jury could conclude that Dr. Cheshier did represent himself in some manner as a psychologist or one able to practice clinical psychology. Dr. Cheshier practices under the title "Clinical Psychotherapist," a title which the public might well believe is "clinical psychologist." His handout to patients notes that he has a doctorate in psychology and is a member of the American Psychological Association and has "chosen" not to be registered as a clinical psychologist. The Sullivans could make their case against Dr. Cheshier under the CPLA.

The other four claims do not arise from statute but the plaintiffs argue that it is wrong to characterize them as simple personal injury claims governed by the two-year limitation period.

Over a hundred years ago, an Illinois court held that the two-year statute applies only where there is some physical injury to the person and the five-year period catch-all applied to a suit by a wife accusing her father-in-law of breaking her marriage. *Bassett v. Basset*, 20 Ill.App.Ct. 543, 548 (1886). *See generally Johnson v. Arnos*, 624 F.Supp. 1067, 1071–73 (N.D.Ill.1985) ("absent specific legislation Illinois courts have placed personal tort actions based on intangible rights under the residual statute.") *Johnson v. Arnos* and *Shorters v. Chicago*, 617 F.Supp. 661, 665 (N.D.Ill.1985), relied on this distinction between physical injury and other injuries and held that the five-year limitation period governed § 1983 actions alleging nonphysical injury. As a proposition of federal § 1983 law, the Court of Appeals has disagreed and disapproved both *Johnson* and *Shorters*. *Kalimara v. Illinois Department of Corrections*, 879 F.2d 276 (7th Cir.1989). But this does not resolve the question of what law the Illinois courts would apply. *Berghoff v. R.J. Frisby Mfg. Co.*, 720 F.Supp. 649, 652–53 n. 4 (N.D.Ill.1989).

■ The Illinois courts look to the nature of the damage in deciding whether the two-year or five-year statute applies, *i.e.*, what injury occurred and to what interest it occurred. *Compare Schreiber v. Eastern Airlines, Inc.*, 38 Ill.App.3d 556, 348 N.E.2d 218 (1976) (Contract claim arising from burns inflicted by flight attendant is physical harm case governed by two-year period) *with Roth v. Lundin*, 237 Ill.App.Ct. 456, 458 (1925) (Suit to recover for expenses resulting from spouse's physical injury is governed by five-year statute). That these claims arise, in part or whole, out of acts of "malpractice" is not germane. Suits arising from malpractice by licensed practitioners is limited to two years after discovery and no more than four

---

**4.** The Act also bars unlicensed persons from *rendering* or offering to render clinical psychological services. 225 ILCS 15/3(a). These sections are at war with the provision that allows one to *carry on* clinical psychological activities as long as one does not wrongly represent his status. It may well be that the Illinois General Assembly, as it has before, gave something to unlicensed practitioners with one hand and took it away with the other hand. I do not now have to decide what is legally left for an unlicensed practitioner to do except that the scope of such a practice is realistically very limited. If you can't say what services you offer, you are likely to have very few clients.

years after the event. 735 ILCS 5/13–212(a).[5] The defendant is not licensed. The statute does not apply to him. *Cox v. Kaufman,* 212 Ill.App.3d 1056, 156 Ill.Dec. 1031, 571 N.E.2d 1011 (1991). Absent this malpractice statute, Illinois courts analyze whether or not the injury is tangible. *.See Doerr v. Villate,* 74 Ill.App.2d 332, 220 N.E.2d 767, 760 (1966).

The interests of John Sullivan and Susan Sullivan are intangible; there is no claim that they were physically injured. Loss of companionship and society do not constitute physical harm. *See Dralle v. Ruder,* 124 Ill.2d 61, 124 Ill.Dec. 389, 395, 529 N.E.2d 209, 215 (1988) (Clark, J., concurring). In fact, Dr. Cheshier says their injuries are so intangible that they have no standing to sue. But in *Dymek v. Nyquist,* 128 Ill.App.3d 859, 83 Ill.Dec. 52, 469 N.E.2d 659 (1984), a father was allowed to sue his ex-wife and a psychiatrist for destroying a father-son relationship. So, too, in *Kunz v. Deitch,* 660 F.Supp. 679, 683 (N.D.Ill.1987), a father could sue grandparents for trying to separate him from his son. Parents may not sue generally for damages caused by malpractice against a child, but the summary record here can be read to say that Dr. Cheshier specifically directed his actions, in part, against the parents and their interests, that he imposed a false memory in Kathleen Sullivan, instructed her to break contact with her parents if they dissented from her memory and prevented the parents from taking some reasonable steps to inquire into the validity of the memory.[6]

Whether a parent can sue where malpractice causes damage to a parent-child relationship has been addressed by courts construing Illinois law. The answer is yes where malpractice causes the death of the child. *Bullard v. Barnes,* 102 Ill.2d 505, 82 Ill.Dec. 448, 468 N.E.2d 1228 (1984). Where the child lives, the answer is different. *Dralle v. Ruder,* 529 N.E.2d at 214–15, held that a parent cannot sue for loss of filial society that occurs as a consequence of malpractice. *Dralle* left open the question whether this rule would apply to acts "intentionally and directly interfering with the parent-child relationship." The Supreme Court of Illinois noted that the First and Fourth District Appellate Courts had split on the question and one federal judge had found a cause of action. Since *Dralle* was decided, Judge Shadur of this court reluctantly concluded that even intentional interference between parent and child is not actionable. *Alber v. Illinois Dep't of Mental Health & Developmental Disabilities,* 786 F.Supp. 1340, 1364–65 (N.D.Ill.1992).[7] Other states which have precluded recovery for negligent damage to family ties do permit suits for intentional damage. *E.g., Siciliano v. Capitol City Shows,* 124 N.H. 719, 475 A.2d 19 (1984); *Surina v. Lucey,* 168 Cal.App.3d 539, 214 Cal.Rptr. 509 (1985).

Judge Shadur wrote that each of the factors which caused the Supreme Court of Illinois to reject the negligent interference tort would also lead it to reject the intentional interference tort. These were "the availability of a tort remedy to the injured child, the possible multiplication of claims and the difficulty of determining damages." *Dralle,*

5. The 1976 malpractice statute did not materially change Illinois law which had used a two years after discovery rule, what it did was to impose a four year outside limit on all claims to shorten the long tail of liability. *Anderson v. Wagner,* 79 Ill.2d 295, 37 Ill.Dec. 558, 402 N.E.2d 560 (1979).

6. There is a spate over the "healing art affidavit" required by 735 ILCS 5/2–622 to prosecute malpractice claims for injury or death. The statute may or may not apply to suits against unlicensed practitioners though I think it does. *See Lyon v. Hasbro Indus.,* 156 Ill.App.3d 649, 109 Ill.Dec. 41, 509 N.E.2d 702 (1987). In any event, there is an affidavit. The affidavit is signed by a psychiatrist who has relied upon what the parents said. This is not good practice, but the parents

have not had access to Dr. Cheshier's records and, under these circumstances, the affidavit is adequate. *See* 735 ILCS 5/2–622(a)(3). This is particularly true here where the summary judgment materials include scientific papers on the question of repressed memory.

7. If nothing else Count III must be dismissed because of *Dralle;* it is a pure negligence count. *Dralle* is not surprising in this regard because Illinois generally does not allow anyone but the patient to sue over negligent malpractice even when that malpractice causes physical injury to others, as occurs when an infectious disease is improperly treated and is passed on to family members. *Britton v. Soltes,* 205 Ill.App.3d 943, 150 Ill.Dec. 783, 563 N.E.2d 910 (1990).

529 N.E.2d at 213. I think that two of these factors might generally be absent in the context of some intentional torts. In this case and cases like these, the child will not sue and claims will not be multiplied. Indeed, the gravamen of this particular sort of claim is that the damage inflicted by the defendant causes the inability of the child to sue. While I believe Judge Shadur's prediction about what the Supreme Court of Illinois would do may be correct in most cases, I do not believe that Court would preclude an intentional tort suit under the specific facts alleged here. *See Person v. Behnke,* 242 Ill.App.3d 933, 183 Ill.Dec. 702, 705–07, 611 N.E.2d 1350, 1353–55 (1993).

■ Dr. Cheshier accuses the plaintiffs of arguing against their own complaint. He notes that Count I (Malpractice) seeks relief for injury to physical health, emotional and mental well being and for pain and suffering, physical and otherwise. Count II (Intentional Infliction of Emotional Distress) claims severe emotional distress. Count IV (Loss of Society and Companionship) cites humiliation, mental anguish and emotional distress. These are the sorts of physical injury subject to the two-year period. I think Dr. Cheshier reads the complaint too narrowly. The Sullivans used ordinary personal injury language, perhaps as a reflection of lawyerly habit, but the injury is the excision of their daughter from their family. Count II, however, is directed toward traditional infliction of tangible injury and the two year statute does apply and, it seems to me, that the record contains no evidence of a specific act intentionally causing emotional distress after January 6, 1991. Count II is dismissed. *See Dahl v. Federal Land Bank Ass'n,* 213 Ill. App.3d 867, 157 Ill.Dec. 242, 245, 572 N.E.2d 311, 314 (1991).

■ The viability of Counts I and IV also depend on the meaning of a statute. 735 ILCS 5/13–203. In 1974, the Supreme Court of Illinois applied the five-year period to a suit for loss of consortium. *Mitchell v. White Motor Co.,* 58 Ill.2d 159, 317 N.E.2d 505

(1974). The Court reached this result by distinguishing between physical injuries and other sorts of injuries. The General Assembly changed this result by enacting a two-year limit for "actions ... for loss of consortium or other actions deriving from injury to the person of another." 735 ILCS 5/13–203. Illinois courts have construed the law to include loss of society and companionship of a child. *Batteast v. Wyeth Labs., Inc.,* 172 Ill.App.3d 114, 122 Ill.Dec. 169, 526 N.E.2d 428 (1988), *rev'd on other grounds,* 137 Ill.2d 175, 148 Ill.Dec. 13, 560 N.E.2d 315 (1990). But this case can be read and the Sullivans ask that it be read, not to allege solely damage deriving from injury to the person of another, but rather damage inflicted upon the plaintiffs by the reckless or intentional acts of defendant directed toward the plaintiffs.

■ Dr. Cheshier finally urges the absence of evidence to prove the facts alleged. His argument is simple. He denies implanting any memories—false or otherwise. So does Kathleen Sullivan.[8]

When there are only two witnesses to an event and both swear to the same version of the event, it is often difficult to refute that version. But it is not impossible, even when the refutation must be proved beyond a reasonable doubt.

The Sullivans offer, as they must, circumstantial evidence. Dr. Cheshier told them he had hypnotized Kathleen Sullivan and while under hypnosis she stated that she was abused by an older sibling. Dr. Cheshier told them (directly or by implication) that no testing questions could be asked of Kathleen Sullivan. The Sullivans conducted an investigation of the truth of the statements and found no evidence to corroborate the statements and have a witness who denies the truth of the statements. Prior to Dr. Cheshier's hypnosis, Kathleen Sullivan never made similar statements. Finally, there is the statement by Kathleen Sullivan while being treated by Dr. Cheshier, arguably admissible under F.R.E. 803(2) or 803(3), that

8. Dr. Cheshier argues that there is insufficient evidence that the family was destroyed because Kathleen Sullivan has had phone conversations and, as she puts it, "face to face contact" with

both her mother and father and a phone conversation with the accused sibling. But I do not believe that plaintiffs have to prove the complete severance of contact in order to make their case.

she would decline all family contacts unless family members admitted the statements were true. From these facts, a jury could infer that the memories were false and intentionally or recklessly implanted by Dr. Cheshier. There is no question that after the statements were made by Kathleen Sullivan her relations with her parents and siblings changed for the worse. It would be hard to doubt that the family relationship would be seriously and negatively affected in this situation. A trier of fact could reasonably lay it at Dr. Cheshier's door. And, a trier of fact could find that Dr. Cheshier practiced clinical psychology without a license.

For the reasons stated above summary judgment is granted to defendant on Counts II and III and denied as to Counts I, IV and V.